RIDDELL ET AL., RESPONDENTS, v. PECK-WILLIAMSON
HEATING AND VENTILATING CO.,
APPELLANTS.

(No. 1,419.)

(Submitted March 6, 1902.    Decided June 23, 1902.)

*Contracts—Express Agreement—Evidence—Parol Agreement
—Altering Contract — Breach — Partial Performance—
Quantum Meruit.*

1. By the terms of a written contract, plaintiffs agreed to furnish all labor
   and materials necessary for placing a heating plant in a building, the ma-
   terials and labor to be paid for according to a certain schedule of prices,
   but no time was fixed for payment. *Held,* that substantial performance
   of the whole contract was a condition precedent to liability for the whole
   or any part of the consideration,—the fixing of the prices on the different
   articles not amounting to a severance; *held further,* error to admit evi-
   dence that at the time the written contract was made an oral agreement
   was entered into that payments should be made in conformity with a usage
   and custom, as the work was done and the material furnished.
2. *Held,* that where plaintiffs agreed with defendant for a certain sum to
   put a heating plant into a building, defendant having contracted to put it
   in, and plaintiffs abandoned the work without good cause after a part of
   the plant had been put in, there being no severance of the contract nor
   apportionment of tne consideration, they might not recover on a *quantum
   meruit* for the value of the work done and materials furnished.
3. That after the action was commenced plaintiffs finished the work for the
   owner, who charged the cost to defendant, was of no moment.

*Appeal from District Court, Gallatin County; F. K. Arm-
strong, Judge.*

ACTION by J. A. Riddell and another against the Peck-
Williamson Heating & Ventilating Company. From a judg-
ment for plaintiffs, defendant appeals. Reversed.

*Messrs. Luce & Luce,* and *Mr. C. B. Matthews* of the Ohio
Bar, for Appellant.

The covenants went to the whole consideration on both sides.
They were mutual conditions the one precedent to the other.
(*Lowber* v. *Bangs,* 2 Wallace, 728, Opin. 736; *Hutchinson* v.

*Wetmore,* 2 Cal. 310-312; *Ernst* v. *Cummings et al.,* 55 Cal. 179.) The consideration is single and entire, although the subject of the contract may consist of several distinct and wholly independent items. (*Miner* v. *Bradley,* 22 Pick. 457; *McMillan* v. *Vanderlip,* 12 Johns. 165; *Isaacs* v. *McAndrews,* 1 Mont. 437; 7th Am. & Eng. Enc. (2d Ed.), pages 95, 96 and 97, and cases cited; *Baker* v. *Higgins,* 21 N. Y. 397, Opin. 398-399; *Kein* v. *Tupper,* 52 N. Y. 550; *Husted* v. *Craig,* 36 N. Y. 221; *Norris* v. *Harris,* 15 Cal. 226; *Moore* v. *Bonnet,* 40 Cal. 251-254.) The contract being entire by the very nature of the agreement, before a recovery could be had upon the contract, it was necessary for the plaintiffs to allege the completion of the contract upon their part or to show some good excuse for the non-performance. (4th Enc. Plead. & Prac. 627, 628, 629, 630, 631 and 632, and numerous cases cited therein; *Lester* v. *Jewett,* 11 N. Y. 453; *Dunham* v. *Mann,* 8 N. Y. 508.) The first cause of action therefore did not state facts sufficient to constitute a cause of action. "If the performance of the condition precedent is essential to the right of action, an omission to allege performance is a defect that can be taken advantage of at any stage of the action." (4th Enc. Plead. & Prac. 660 and 661, and cases cited; *Benware* v. *Pine Valley,* 53 Wis. 527; *Webber* v. *Greenfield,* 74 Wis. 236.) Having refused to proceed with the work under the contract, plaintiffs could not recover in this action. (*Isaacs* v. *McAndrews,* 1 Mont. 437; *Franklin* v. *Schultz,* 23 Mont. 165; *McMillan* v. *Vanderlip,* 12 Johns. 165; *Jones* v. *United States,* 96 U. S. 24; Smith's Leading Cases, Vol. 2, page 1; *Ernst* v. *Cummings et al.,* 55 Cal. 179; *Clarke* v. *Collier,* 34 Pac. 677; *Krumb* v. *Campbell,* 102 Cal. 370; *Mount* v. *Lyons,* 49 N. Y. 552; 7 Am. & Eng. Enc. of Law (2d Ed.), page 97; *Moore* v. *Campbell,* 12 N. E. (Ind.) 495; *McGonigle* v. *Klein,* 40 Pac. 465; *Cox* v. *W. P. R. R. Co.,* 44 Cal. 18; *Cox* v. *McLaughlin,* 54 Cal. 605; *Palm et al.* v. *Railroad Co.,* 18 Ill. 219.)

The mere failure to pay the money due upon the contract, before the completion of the work, did not constitute such a "prevention" as justified a recovery in the present action.

(*Mount* v. *Lyons,* 49 N. Y. 552-553; *Cox* v. *McLaughlin,* 63 Cal. 196; *Bogardus* v. *N. Y. Life Insurance Co.,* 101 N. Y. 328, 4 N. E. 522; *Alabama Gold Life Insurance Co.* v. *Garmary,* 74 Ga. 51; *Archer* v. *McDonald,* 36 Hun. (N. Y.) 194.) Partial failure to perform will not entitle one party to rescind the contract unless it is destructive to the contract. (2 Parson on Contract, 679, 680 and 681.) The contract being clear and unambiguous, and the law itself fixing the time for payment under such contracts, no custom or usage could be invoked to put a different construction upon the contract or to alter or vary its terms. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." (Sec. 2203, Civil Code of Montana; *Hawley* v. *Brumagin,* 33 Cal. 394; *Norton* v. *Woodruff,* 2 N. Y. 153; Sec. 2202 of the Civil Code; Sedgwick on Construction of Stat. and Const. Laws (2d Ed.), page 195; *United States* v. *Fisher et al.,* 2 Cranch, pages 385 Opin. bottom 399.) It is clear that the court should have stricken out all of the allegations relating to the alleged custom and usage as to time of payment. (Sec. 3146, Code of Civil Procedure.)

Custom or usage can not control the legal rules applicable to the construction of a contract and evidence that by a custom a contract means something different from what its terms clearly import is inadmissible. This is the invariable rule. (*Barnard* v. *Kellogg,* 10 Wallace on p. 391; *Snell* v. *Hall,* 107 Mass. page 134; *Wilson* v. *Smith,* 111 Ala. 170; *Partridge* v. *Phoenix Mut. L. Ins. Co.,* 15 Wall. 572; *Randolph* v. *Halden,* 44 Iowa, 327; *Land* v. *Henderson,* 63 Mich. 302; *Barnard* v. *Kellogg,* 10 Wall. 383, 391, 394; *Sweeney* v. *Thompson,* 9 Lea (Tenn.), 359; *Chambers* v. *U. S.,* 24 Ct. of Cl. 387; *Fitzgerald* v. *Hanson,* 16 Mont. 474.) Nor can custom and usage be invoked to vary the legal import of a contract. And where by judicial construction a contract has a certain meaning, that meaning can not be varied by evidence of usage. (27 Am. & Eng. Enc. page 862; see pages 863 to 866, and cases cited, particularly *Groate* v. *Gile,* 51 N. Y. 431; Rice on Evidence, Vol. 2, Sec. 351, particularly pages 908-909; *Wilson* v. *Knott,* 3 Humph. (Tenn.)

473; *Ripley* v. *Crooker,* 42 Me. 370 to 374; *Moran* v. *Prather,* 23 Wall, 492 to 499 and 500; *Baltimore Baseball and Exhibition Co.* v. *Picket,* 22 L. R. A. 690 to 692; *Fairley* v. *Wappoo Mills,* 29 L. R. A. 215.)

It has been held that usage and custom cannot be proved to show that services under an entire contract are payable *pro rata,* as that would vary the contract itself. (*Petty* v. *Gayle,* 25 Ala. 422; *West* v. *Ball,* 12 Ala. 340.) "Expressions of the court are perhaps unanimous to the effect that the operations of settled rules of law cannot be changed by proof of the usage having a contrary effect. If on a given state of facts the right and liabilities of the parties to a contract are fixed by the general principles of the common law, they can not be changed by any local custom." (27 Am. & Eng. Enc. of Law, pages 782 and 783, and cases cited; *Dwight* v. *Boston,* 12 Allan, 316; *Thompson* v. *Riggs,* 5 Wall. 663-667; *Hinton* v. *Locke,* 5 Hill, 437; *Schooner Reeside,* 2 Sumner, 567; *Thompson* v. *Ashton,* 14 Johns. 316; Sec. 2186, Civil Code; Sec. 3132, Code of Civil Procedure; *Fisher* v. *Briscoe,* 10 Mont. 124.) It is the universal rule that where the words of the contract are not uncertain in themselves that proof of a different meaning or an oral agreement different than the writing contemporaneous with it can not be introduced. (*Goldman* v. *Davis,* 23 Cal. page 256; *Guy* v. *Bibend,* 41 Cal. page 322-325; *Ward* v. *Macnaughton,* 43 Cal. page 159; *Baker* v. *Higgins,* 21 N. Y. page 397; *Gray* v. *Harper,* 1 Story, 574; Vol. 1, Greenleaf on Evidence, Sec. 277, and see Secs. 278-280 and 281; *Jingerman* v. *Bovee,* 19 Cal. page 355, Opin. 364.) It is the universal rule that where a party has an election between one of two inconsistent remedies he is confined to that which he first chooses, and it has been held that where a choice has once been made the right to follow the other is forever gone. (*Morris* v. *Rexford,* 18 N. Y. 552; *Rodermund* v. *Clark,* 46 N. Y. 354; *Bowen* v. *Manderville,* 95 N. Y. 237; *Hanly* v. *Kelly,* 62 Cal. 155, Opin. 159, and cases cited; *Moller et al.* v. *Tuska,* 87 N. Y. 166; 7 Enc. Plead. & Prac. pages 361-364.)

If a special written contract is subsisting, a party may not

abandon it and sue in *assumpsit* at his option. The action must be on a special contract. (*Clarke* v. *Smith,* 14 Johns. 326; *Dermott* v. *Jones,* 2 Wall. page 1; *Cutter* v. *Powell,* 2d Smith's Leading Cases, page 1, and see Wall. note, page 48;*Catlin* v. *Tobias,* 26 N. Y. 217; Greenleaf on Evidence, Vol. 2, Sec. 104; *Jennings* v. *Camp,* 13 Johns. 95; *Faxon* v. *Mansfield,* 2 Mass. 147; *Whiting* v. *Sullivan,* 7 Mass. 109; *Miller* v. *Watson,* 5 Wend. 67; *Bradley* v. *Levy,* 5 Wis. 400; 4th Enc. Plead. & Prac. pages 923 to 925, where numerous cases are cited; *O'Connor* v. *Dingley,* 26 Cal. 13; *Beadle* v. *Graham,* 66 Ala. 99; *Johnson & Sloan* v. *Clark,* 22 Ga. 541; *Alabama Gold L. Ins. Co.* v. *Garmary,* 74 Ga. 51, Opin. pages 58 and 61, and cases cited; *Darden* v. *James,* 48 Ala. 33, 37 and 38; *Swift* v. *Williams,* 2 Ind. 365, Opin. 368, and cases cited.)

In *Olmstead* v. *Beale,* 19 Pickering, 528, Justice Morton said: "The plaintiff can not recover on his express contract because he has not executed it on his part, and the performance is a condition precedent to the payment. He can not recover on a *quantum meruit* because an express contract always excludes an implied one in relation to the same matter. (*Wooten* v. *Read,* 2 Smedes & Marshall-Rep. (10 Miss.) 585; *Cobb* v. *West,* 11 N. Y. Superior Court (4 Duer, 38); *Mack* v. *Bragg,* 30 Vt. 571; *Catlin* v. *Gunter,* 1 Kernan, 328; *McGonigle* v. *Klein,* 40 Pac. 465.) It can not be claimed that this is a case where *assumpsit* will lie because the work and labor performed was a benefit to the plaintiff. If flues and ducts, stone work, etc., went up as the agricultural college was constructed, the defendant could not tear out what had been already done. This case comes within the rule laid down in *Franklin* v. *Schultz,* 23 Mont., above cited. See *Faulkner* v. *Purl,* Smith's Rep. 275, (Ind.) This case could not even come within the exception, for it is only where work is done in nonconformity with the contract that *assumpsit* will lie, unless the contract has been fully completed. The plaintiffs' claim that the work was done in strict conformity with the contract.

The second cause of action was in no sense an amendment to the cause of action upon the written contract, but it introduced

an entirely new cause of action. It did not correct the name of a party or a mistake or imperfection in the original complaint. Such amendments are forbidden at common law and under the Codes. (1st Enc. Plead. & Prac. 547-557, and notes; *Whalen* v. *Gordon et al.,* 95 Fed. 305; *Gillis et al.* v. *Cobe et al.,* 59 N. E. 455.)

The court should have compelled the plaintiffs to elect upon which cause of action they would proceed to trial. (*Rice* v. *King,* 7 Johns. 20; *Bowen* v. *Mandeville,* 95 N. Y. 237-241; Boone, Code Pleading, Vol. 1, Sec. 36; *Scofield* v. *Miltimore,* 74 Wis. 194; *Dewey* v. *Fifield,* 2 Wis. 73; Estee's Pleading (4th Ed.), 319 A.)

*Messrs. Hartman & Hartman,* for Respondents.

Respondents contended in the court below and still contend for the following propositions:

1. Respondents conferred upon appellant a benefit to the amount of $9,312.96 through the partial or imperfect performance of their contract, which benefit appellant accepted, retained and enjoyed. They then abandoned their contract through poverty and other forces with which they could not contend, but they may nevertheless maintain an action against appellant to recover the value of the benefit so conferred, less the amount, if any, which appellant was damaged by reason of the abandonment of the contract. Under the contract in question appellant having agreed to pay for all material and labor furnished to it, respondent could at any time sue for and compel the payment for material and labor furnished in accordance with the contract up to such time, the contract being silent otherwise as to the time of payment. Assuming that appellant's contention that the contract in question is an entire contract is correct, the fact that the labor and material valued at $9,312.96 was furnished to and retained by appellant for its use and benefit after respondents abandoned their contract, constitutes a severance of the entirety of the contract, and appellants are liable to respondents for the value of such labor and material so

furnished and retained, subject only to reduction for such damages as appellant may have sustained by respondents' failure to fulfill their contract. (Bishop on Contracts (Enlarged Ed.), Secs. 1442, 1444 and 1445; 2 Parsons on Contracts (6th Ed.), page 523.) We concede that formerly this was not generally the rule declared by the courts; yet even in the earlier period of the law's growth some courts established this wise and salutary rule. However, even yet some of the courts state the rule to the contrary, notably those of New York, Wisconsin, Michigan, Alabama and Kentucky. Pennsylvania has stated the rule both ways, so has Kentucky, but the courts generally, aside from these, and especially in the later decisions, state the rule as above contended for. Even where the case is one of personal employment and the employe abandons his contract without full performance and without cause, the tendency of the later cases is toward allowing him to recover for the service rendered where the employer actually receives benefit from the labor performed which benefit is in excess of the damages accruing to him by reason of the abandonment of the contract. (*Jordan* v. *Fitz,* 63 N. H. 227; *Britton* v. *Turner,* 6 N. H. 492, 26 Am. Dec. 713; *Elliott* v. *Heath,* 14 N. H. 131; *Clough* v. *Clough,* 26 N. H. 24; *Parcell* v. *McComber,* 11 Neb. 209; *McMillan* v. *Mallory,* 10 Neb. 228, 39 Am. Rep. 471; *Duncan* v. *Baker,* 21 Kan. 99; *Byerlee* v. *Mendel,* 39 Iowa, 382; *Riggs* v. *Horde,* 25 Tex. Supp. 456, 78 Am. Dec. 384; *Byrd* v. *Boyd,* 17 Am. Dec. 740; *McDonough* v. *Evans Marble Co.,* 112 Fed. 637; *Saunders* v. *Short et al.,* 86 Fed. 229-230.) Some courts hold this on the ground that the wages are payable in installments. (*Matthews* v. *Jenkins,* 80 Va. 463; *Chamblee* v. *Baker,* 93 N. C. 98; *Davis* v. *Preston,* 6 Ala. 83; *Ricks* v. *Yates,* 5 Ind. 115), and this is held to be the rule even where the contract is entire. (*Walworth* v. *Vinnegan,* 33 Ark. 751; *Smith* v. *Keith & Perry Coal Co.,* 36 Mo. App. 567.) In many cases the courts hold that the acceptance formally or substantially by using the materials furnished or labor performed constitutes in itself a severance of the entire contract and the defendant cannot be heard to say that it is entire. (*White* v. *Gillman,* 43 Ill. 502; *Tessler* v.

*Love,* 43 Pa. St. 313; *Sullivan* v. *Mining & Milling Co.,* 77 Cal. 418; *Walker* v. *Millard,* 29 N. Y. 375; *Maloney* v. *Rust,* 42 Conn. 236; *Freeman* v. *Cammell,* 22 Ga. 184; *Allen* v. *Willis,* 4 La. Ann. 97; *Thompson* v. *Percell,* 92 Mass. 426; *Austin* v. *Keating,* 21 Mo. App. 30; *Fleischman* v. *Miller,* 38 Mo. App. 177; *Linnenkohl* v. *Winkelmeyer,* 54 Mo. App. 570; *Heman* v. *Compton Hill Imp. Co.,* 58 Mo. App. 480; *Gomer* v. *McPhee* (Colo.), 31 Pac. Rep. page 119.) The following cases are also in support of the principle contended for: *Greene* v. *Haley,* 5 R. I. 260; *Elliott* v. *Haycock,* 25 Pa. St. (1 Casey) 382; *McLaughlin* v. *Hess,* 164 Pa. St. 570; *Spear* v. *Snyder,* 29 Minn. 463; *Cleary* v. *Sohier,* 120 Mass. 210; *Butterfield* v. *Byron,* 153 Mass. 517, 27 N. E. 667; *Richardson* v. *Shaw,* 1 Mo. App. 234; *Haynes* v. *St. L. Baptist Church,* 12 Mo. App 536; *Haynes* v. *Second Baptist Church,* 88 Mo. 285; *Wilson* v. *Knott,* 22 Tenn. (3 Humph.) 473; *Hollis* v. *Chapman,* 36 Tex. 1; *Weis* v. *Devlin,* 67 Tex. 507, 3 S. W. 726; *Hindrey* v. *Williams,* 12 Pac. 436; *Brackett* v. *Morse,* 23 Vt. 554; *Lee* v. *New Haven M. & W. R. Co.,* Fed. Case No. 8,197; *Porter* v. *Arrowhead Res. Co.,* 100 Cal. 500; *Strington, etc. Co.* v. *Riley,* 8 Ky. Law Rep. 267; *Bean* v. *Miller,* 69 Mo. 384; *Mugan* v. *Regan,* 48 Mo. App. 461; *Bennett* v. *Shaughnessy,* 6 Utah, 273, 22 Pac. 156; *Hill* v. *Hovey,* 26 Vt. 109; *Cargain* v. *Everett,* 62 Hun. 620; *Avery et al.* v. *Willson,* 81 N. Y. 341; *Ferrel* v. *Wilson,* 19 N. Y. Supp. 209. The case of *Isaacs* v. *McAndrews,* 1 Mont. 437, is relied upon by appellant. While we do not think the facts in that case are so similar to the facts in this that the doctrine therein laid down could be applied, yet we submit that the authorities cited in support of it on page 451 are very old and the courts of all the states, except New York, there cited subsequently laid down the better rule which we contend for. Even in Mississippi, where the courts have carried the doctrine contended for by appellant to the extreme, the court there holds in one case that where a railroad contractor is, by the terms of his contract, to be paid in installments as the work advances, the contract is not entire and he is entitled to recover for the work done if defendant refuses to pay the

installments as provided. (*Wright* v. *Petrie,* 1 Smedes & M. Ch. (Miss.), 282.) Of course in such circumstances the amount of the recovery is limited to or rather determined by the price fixed in the contract. (*Brigham* v. *Hawley,* 17 Ill. 38; *McClelland* v. *Snider,* 18 Ill. 58; *Folliott* v. *Hunt,* 21 Ill. 654; *Chicago* v. *Sexton,* 115 Ill. 230; *McClure* v. *King,* 15 La. Ann. 220; *Tautholl* v. *Ness,* 35 Minn. 370; *Ibers* v. *O'Donnell,* 25 Mo. App. 120; *Austin* v. *Austin,* 47 Vt. 311; *Western* v. *Sharp,* 53 Ky. 177; *Carpenter* v. *Gay,* 12 R. I. 306.)

2. The contract being silent as to time of payment, such payment would be made according to any custom or usage which prevailed where the contract was to be performed. If a custom or usage with reference to payments existed, it was competent for the parties to agree outside of and contemporaneous with the written contract that such custom or usage should control the question of payments in the absence of any provision in the written contract. Irrespective of whether any usage or custom prevailed with reference to payments, it was competent for the parties to enter into a contemporaneous oral or written agreement as to the time of payment, for no time for such payments was specifically fixed by the contract, and such agreement did not contradict or vary the terms of the contract. (Civil Code, Secs. 2211, 2209, 2210, 2212, 2220, 2221; Code of Civil Procedure, Secs. 3132, 3136, 3137, 3139, 3140, 3146, Subdivision 12; Clark on Contracts, pages 580-581, 576, 574; *Hulbert* v. *Dusenbery,* 57 Pac. 860; *Sivers* v. *Sivers,* 97 Cal. 518; *Bradford Inv. Co.* v. *Joost,* 48 Pac. 1081, on page 1083; *Wolters* v. *McCart* (Wash.), 63 Pac. 1121; *Weeks* v. *Medler,* 20 Kan. 57; 1 Greenl. Ev. 303.)

3. In this case respondents might have sued upon the *quantum meruit* without reference to the contract, simply alleging that the material and labor was furnished and performed for and accepted and retained by appellant, in which case the contract price would be the *quantum meruit* or measure of the value of respondents' recovery. It was also competent for respondents to declare in one count upon the contract together with the usage or custom controlling the payments and the oral

contemporaneous contract as to the time of payments, and allege the amount due for labor and material furnished under the contract in accordance with the contract price, and in another count to set up the same facts in the form of the *quantum meruit* so that their pleading might respond to every possible state of the proofs. Having plead the facts both ways, it would have been error for the court to have compelled respondents to elect upon which cause of action or account they would rely at the trial, as respondents would thereby have been deprived of the very advantage which the rule permitting the same cause of action to be stated in different forms so as to meet every possible state of the proofs confers upon the pleader; and under the pleading in question appellant could not have been at any possible disadvantage as both counts of the second amended complaint informed it in detail that respondents were seeking to recover for the same material furnished and labor performed in each count. (Bliss, Code Pleading (3d Ed.), Sec. 120; *Estrella Vineyard Co.* v. *Buttler* (Cal.), 57 Pac. 981; *Cowan* v. *Abbott,* 92 Cal. 100; *Remy* v. *Olds,* 88 Cal. 537, pages 540 and 541, and 34 Pac. 217, and cases there cited; *Gridley* v. *Gridley,* 24 N. Y. 130; *Rucker* v. *Hall,* 105 Cal. 425 and 429; *Manders* v. *Croft* (Colo.), 32 Pac. 836; *Wordman* v. *Davis* (Kan.), 4 Pac. 263; Abbott's Trial Brief Civ. pages 83, 84 and 87; *Waggy* v. *Scott,* 29 Ore. 386, 45 Pac. 774; *Clark* v. *Ryon,* 95 Ala. 406; *Ware* v. *Reese,* 59 Ga. 588; *Chiles* v. *Critchfield,* 2 Mo. App. 1351; *Waterman* v. *Waterman,* 81 Wis. 17; *Manning* v. *Dallias,* 73 Cal. 420; *Bringham* v. *Knox,* (Cal.), 59 Pac. 198; *Leeke* v. *Hancock,* 76 Cal. 127; Code of Civil Procedure, Secs. 672, 773; *Burgess* v. *Helm,* 51 Pac. 1025.)

MR. JUSTICE PIGOTT delivered the opinion of the court.

This action was brought on a contract to recover judgment for $9,312.96, besides interest. The plaintiffs recovered a judgment for $9,743.67, with costs. From it and an order refusing a new trial, the defendant prosecutes these appeals.

··Riddell and Suiter were co-partners. Suiter, in his own name, but for the benefit of the firm, on August 5, 1895, entered into a contract with the executive board of the state agricultural college for the erection by him of certain buildings. Thereafter the defendant (a corporation) and the executive board made a contract by which the defendant agreed to install a heating and ventilating plant in the buildings. Subsequently, and on August 15, 1896, Suiter, in his own name, but for the partnership, entered into a contract, which was reduced to writing, and subscribed by the parties as follows:

"Bozeman, Mont., August 15th, 1896. Agreement entered into this date by and between Charles Suiter, of Helena, Montana, general contractor for furnishing the material and building the buildings for the Montana State Agricultural College, Bozeman, Montana, the party of the first part, and the Peck-Williamson Heating and Ventilating Company, Cincinnati, Ohio, party of the second part. The party of the first part agrees to furnish all the extra material and do all the extra labor that is now not contracted for in general contract for buildings that is necessary to install the heating, ventilating, and sanitary apparatus of the party of the second part in the Montana State Agricultural College Buildings, Bozeman, Montana. All material and labor party of the first part furnishes party of the second part to be paid for by party of the second part according to the following schedule of prices:" the remainder of the instrument being devoted to the rules for measuring the work, the description of the material to be used, and the schedule of prices. The contract does not expressly provide when payment shall be made.

Prior to June 22, 1897, the plaintiffs had performed labor and furnished material under the terms of the contract, which, according to the schedule of prices, amounted to $9,312.96, and which entered into and became parts of the buildings, and cannot be removed. From that day they ceased work, and have never done anything further under the contract. They abandoned it because the defendant refused to pay for the labor and material already per-

formed and furnished, and were unable to proceed for lack of funds. They left undone work amounting to $2,227.67. Their second amended complaint purports to state two causes of action. The first cause of action is based upon the written contract. They allege performance thereunder to the extent of $9,312.96, and refusal by the defendant to pay, and aver that at the time the written contract was signed there was an oral agreement that payments should be made as the labor and material were done and furnished and measured in the buildings and approved by the architect or by the defendant; that a local usage or custom to that effect was in existence, and that the written contract was made with reference thereto, and with the intention that the usage and custom were to control its interpretation. In the second cause of action the plaintiffs counted upon the furnishing of the material and upon the doing of the labor mentioned at the request of the defendant, and alleged the value thereof to be $9,312.96; in short, a *quantum meruit* and *valebat* count.

1. Can the action be maintained upon the special contract? The defendant contends that it was prematurely brought. Upon its face the contract is entire, and the consideration single. The intention of the parties, as disclosed and evidenced by the terms of their engagement reduced to writing, was that the defendant should not become indebted to Suiter unless and until he furnished all the material and did all the labor specified in the contract. There was in the contract no time expressly appointed for payment, but the law made the price due and payable upon complete performance by Suiter or his firm. Substantial performance by Suiter of his promises was a condition precedent to the company's liability under the express contract to pay the whole or any part of the consideration. (*Franklin* v. *Schultz,* 23 Mont. 165, 57 Pac. 1037.) The fixing of prices upon the different items did not operate as a severance (*Isaacs* v. *McAndrew,* 1 Mont. 437); it was a mere means of ascertaining the total compensation to be paid in the event Suiter executed the undertaking.

The plaintiffs alleged that at the time the written contract

was made an oral agreement was entered into that payments
should be made, in conformity with a usage and custom, as the
work was done and the material furnished and measured to the
approval of the architect or of the defendant, and that the con-
tract was made with reference to such usage and custom, and
with the intention that the interpretation of the contract should
be controlled thereby. We doubt whether the evidence was
sufficient to establish either such alleged oral agreement or such
alleged usage or custom. For the purposes of these appeals,
let the sufficiency of the evidence be assumed; let it be assumed
that the oral agreement accompanied the making of the written
contract, and that such a custom as the one pleaded then ex-
isted; and let it further be assumed that, the custom and oral
agreement being proved, payments as the work progressed was
a condition precedent to plaintiffs' obligation to complete the
terms of the written contract. This evidence tended to prove
a severance *sub modo* or an apportionment; and, if payments
were to be made according to custom or as orally agreed, then
a cause of action accrued as soon as the defendant failed to
make a payment when it should have been made. Default in
making such payment would have entitled the plaintiffs, if they
continued to perform under the contract, to recover judgment
for the price of the work already done; or such default would
have warranted them in treating the special contract as at an
end, and authorized them to maintain an action on the implied
promise of the defendant to pay the reasonable worth of the
labor done and material furnished. They could, at their op-
tion, have pursued either course. Was the evidence admissible
over the objections interposed by the defendant? Its compe-
tency was seasonably challenged by objections and motions to
strike on the ground that the plaintiffs sought thereby to alter
or contradict the terms of the written contract; to the over-
ruling of these the defendant reserved exceptions. Section
3132 of the Code of Civil Procedure, which declares a common-
law rule (*Gaffney Mercantile Co.* v. *Hopkins,* 21 Mont. 13,
52 Pac. 561), provides that: "When the terms of an agree-
ment have been reduced to writing by the parties, it is to be
considered as containing all those terms, and therefore there

can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in Section 3136, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties." Section 2204 of the Civil Code declares the familiar principle that "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title." Section 2186 of the Civil Code provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 3146 of the Code of Civil Procedure announces no new rule when it prescribes that evidence may be given upon a trial of "usage, to explain the true character of an act, contract or instrument, where such true character is not otherwise plain; but usage is never admissible, except as an instrument of interpretation."

It is perfectly clear that the evidence was erroneously received. The rule which prohibits the reception of evidence of oral promises or agreements made prior to or contemporaneously with the execution of a written contract purporting to embrace all its terms, which contradict, change, add to, or subtract from the express terms, is declared and interpreted by the decisions of this court, as well as prescribed by statute: *Knox* v. *Gerhauser,* 3 Montana Reports, 278; *Fisher* v. *Briscoe,* 10 Montana Reports, 124, (25 Pac. 30); *Anderson* v. *Perkins,* 10 Montana Reports, 154, (25 Pac. 92); *Gaffner Mercantile Co.* v. *Hopkins,* 21 Montana Reports, 13, (52 Pac. 561); *Sanford* v. *Gates, Townsend & Co.,* 21 Montana Reports, 277,

289, (53 Pac. 749) ; *Armington* v. *Stelle, ante,* p. 13, (69 Pac. 115). This rule is applicable to oral negotiations and agreements which vary the legal construction and import of a written contract, although they do not contradict its express terms. (*Cliver* v. *Heil,* 95 Wis. 364, 70 N. W. 346, and cases there cited; 27 Am. & Eng. Enc. Law (1st Ed.), p. 862.) As to evidence of usage and custom, a similar rule prevails (*Fitzgerald* v. *Hanson,* 16 Mont. 474, 41 Pac. 230) ; it is never admissible when inconsistent with any necessary implication from the express terms of a written agreement, nor to vary or contradict the legal import or effect of the contract. The testimony concerning the alleged oral agreement and supposed usage and custom in respect of the times when payments were to be made varied the legal import and effect of the written contract, and should have been excluded. It added an incident which is inconsistent with the legal interpretation of the express terms of the contract.

The action cannot be maintained upon the special contract in writing.

2. Under the circumstances, can the action be maintained upon the *quantum meruit* and *valebat* count?

This is not an action where, in an attempt in good faith to perform a contract, there have been comparatively unimportant deviations from, or omissions to conform to, its terms. On the contrary, it is a case where the plaintiffs, after partly performing an indivisible contract, without legal cause voluntarily abandoned and refused to complete it, leaving the work unfinished in important and substantial particulars. They insist that they may disregard the express contract which they have refused to perform, and recover the value of the labor and material in an action upon a new contract which they say has arisen from the retention by the defendant of the benefits conferred by part performance of the express contract.

The question involved has been the occasion of decisions almost innumerable. The greatest contrariety of opinion exists. *Britton* v. *Turner,* 6 New Hampshire Reports, 481 (26 Am. Dec. 713), is perhaps the leading case in the United States for

the view that the wrongful refusal to perform and willful abandonment of a special contract does not preclude the violator from maintaining an action upon the common counts for the reasonable value of the services rendered and material furnished. It was an action in *assumpsit* upon the *quantum meruit* for personal services rendered by the plaintiff as a laborer under an entire contract abandoned by him after part performance. Although the soundness of that decision was doubted by the same court in *Davis* v. *Barrington*, 30 New Hampshire Reports, at page 529, it still remains the best evidence of the law for the state where it was made. Several other jurisdictions follow it. Some of the courts which approve *Britton* v. *Turner* decline to apply its rule to the part performance of a building contract, making a distinction which does not seem to rest upon any real difference between the two sorts of contracts. Of the decisions to the contrary, *Lantry* v. *Parks*, 8 Cowen, 63; *Smith* v. *Brady*, 17 New York Reports, 173, (72 Am. Dec. 442); *Eldridge* v. *Rowe*, 2 Gilman, 91, (43 Am. Dec. 41); *Brown* v. *Fitch*, 33 New Jersey Law Reports, 422; *Serber* v. *McLaughlin*, 97 Illinois Appellate Court Reports, 104; *Gill* v. *Vogler*, 52 Maryland Reports, 663; *Timberlake* v. *Thayer*, 71 Mississippi Reports, 279, (14 South. 446, 24 L. R. A. 231); *Widman* v. *Gay*, 104 Wisconsin Reports, 277, (80 N. W. 450), and *Cochran* v. *Balfe*, 12 Colorado Appeal Reports, 75, (54 Pac. 399)—are typical. In *Franklin* v. *Schultz*, 23 Montana Reports, 165, (57 Pac. 1037), the question was reserved.

We think the rule of *Britton* v. *Turner, supra,* is opposed to the weight of authority, and in conflict with fundamental principles of law. The opinion in that case vigorously and plausibly presents the reasons which moved the court to its conclusions, but it impresses us as proceeding upon a false premise. Judicial tribunals should not assume power to compel the discharge of mere ethical duties arising from imperfect or moral obligations. Without a wrong there is no cause of action. A wrong is the breach of a legal duty. A legal duty is an obligation arising either from the contract of the parties or the operation of law. (Sections 1920, 1921, Civil Code.) Unless A.

fails to discharge a legal duty which he owes to B., the latter's rights are not invaded by the former. He has not been wronged, and consequently a cause of action in his favor has not accrued. According to the dictates of morality, it may well be that A., having received a benefit, which he must keep and cannot return, from the part performance of an entire contract by B., who wilfully and without valid excuse refused to perform fully, should be willing to do unto B. as he would have B. do unto him were their relative positions reversed, namely, pay a sum equal to the net value of the benefit. But the law, as we understand it, will not compel him to this. He agreed to pay when B. had performed the conditions, and not before. He has the legal right to stand upon the contract as made. Unless there is a severance, a new contract (express or implied), a waiver, or some other valid excuse for nonperformance, B. cannot maintain an action either upon the original contract for the price or upon the common counts for the reasonable value of the work done in part performance. An attorney at law is employed to attend to a suit at a stipulated fee to be paid after its determination, and partly performs the services contracted for. He then abandons the matter without sufficient reason. Is it possible that the law will permit him to recover in any form of action whatever? If so, then he can obtain a money judgment, on which execution may presently issue, even though the contract provided that he should not be paid until he had fully performed, or until a year, or some other period, had elapsed after the final adjudication of the suit in which he was employed. Illustrations without number might be given. We regard the rule announced in *Britton* v. *Turner, supra,* as tending to encourage parties in violating their agreements, and as enforcing purported contracts which were not intended to be made, and which the law does not create.

In the case at bar the fact that the defendant received the benefit of labor and material of the stipulated price of $9,-312.96 does not raise an implied promise to pay for them. There was no severance of the original contract, nor apportionment of the consideration. The labor and material necessarily

went into and became constituent parts of the buildings, and could not be returned. The defendant having no privilege or power to return them, the benefit therefrom was not voluntarily retained. It was not the intention that they should be returned if Suiter failed or refused fully to execute the contract on his part. If, by one contract, A. agrees to sell and deliver to B. two horses at $100 each, and delivers but one to B., who retains and refuses to return it, there would seem to be a severance; B.'s retention and refusal being doubtless equivalent to a promise to pay for it the price agreed, less his damage occasioned by the nondelivery of the other horse. He has the privilege of keeping or returning the horse received, and when he elects to keep it there is a severance *sub modo,* and A. may recover judgment for the price, less whatever loss B. suffered by reason of the breach. So, where chattels are sold without agreement as to price, and some only are delivered, the buyer, by keeping them as his own instead of returning them, becomes liable to the seller for their reasonable value, and the seller to the buyer for damages. But where there is no alternative, the rule is ordinarily different; as, for example, if A. agrees to paint B.'s house at a fixed price for each square yard of surface, or for each of several coats, or agrees to paint it without stipulation as to price, and after painting a part abandons the work without lawful cause, or valid excuse, here, manifestly, B. is not indebted to A., for the contract is entire, the consideration is single, the labor and material are impossible of return, and neither intended that part performance should effect a severance of the contract or apportionment of the consideration, nor that the retention of the benefit should evince a waiver of complete performance. In such case B. has no alternative, no choice, and A. cannot recover either upon the special contract or upon the common counts. Under such a state of facts there is no implied promise by B. to pay, nor does the law create one. In the case at bar the plaintiffs admit that they did not fully comply with the contract, but left unperformed and unfurnished labor and material of the stipulated price of $2,227.67. At the time the action was commenced the plaintiffs still refused to

proceed with the work.    There was no waiver by the defendant
of full performance, no severance or apportionment, and no
sufficient reason or excuse for nonperformance.     We do not
think that the views expressed are in conflict with Section 2004
of the Civil Code, which provides that " a partial performance
of an indivisible obligation extinguishes a corresponding pro-
portion thereof, if the benefit of such performance is voluntarily
retained by the creditor, but not otherwise.    If such partial per-
formance is of such a nature that the creditor cannot avoid re-
taining it without injuring his own · property, his retention
thereof is not presumed to be voluntary."    That the plaintiffs,
after the action was begun, completed the work at the request
of the executive board of the college, which charged the cost
thereof ($2,227.67) to the defendant, is a fact of no moment
in the present state of the case.

Under the facts disclosed by the evidence on the part of the
plaintiffs, they were not entitled to recover either upon the
special contract pleaded in the statement of the first cause of
action or upon the *quantum meruit* and *valebat* count, consti-
tuting the second cause of action.

Counsel on each side have ably argued many interesting ques-
tions, which we need not consider.    The points decided will
dispose of the appeals upon their merits.    The judgment and
order are reversed, and the cause is remanded, with direction to
grant the motion for a new trial.

*Reversed and remanded.*