LAKE, Respondent, *v.* EMIGH, Appellant.

No. 8719

Submitted September 26, 1947. Decided March 3, 1948.

190 Pac. (2d) 550

(87)

Mr. Harlow Pease and Mr. John F. Emigh, both of Butte, for appellant.

Mr. M. J. Doepker and Mr. D. Wilbur Zundel, both of Butte, Messrs. Hennessey & Hennessey of Billings, and Leif Erickson, of Helena, for respondent.

MR. JUSTICE CHOATE delivered the opinion of the court.

This is an appeal from a judgment for damages for personal injuries. In considering it the history of the case becomes material. The case was tried in the district court of Silver Bow county in May 1944, resulting in a judgment for plaintiff in the amount of $8,000 from which defendant appealed (Lake v. Emigh, Mont. 167 Pac. (2d) 575). Upon that appeal the judgment was reversed and the cause remanded for a new trial. The second trial resulted in a verdict and judgment for plaintiff in the amount of $6,000. This judgment is now before us for review on defendant's appeal therefrom.

There is little material difference in the facts established on the first and second trials of the case, thus making applicable the rule of the law of the case (Eliason v. Geil, 116 Mont. 434, 154 Pac. (2d) 277) and, unless otherwise indicated, the facts commented upon in this opinion are those which appear in the transcript before us on the present appeal. Likewise, plaintiff did not amend her complaint following the reversal of the first judgment. Consequently the issues of fact are identical with those considered on the first appeal except as to the issue of contributory negligence in the use of the ladder which was modified in our former opinion.

One Eli Virta was the owner of three houses on the corner of Lee Avenue and Broadway in Butte. One of these houses faced north on Broadway and was designated as 476 Broadway. The other two houses were duplex dwelling houses facing east on Lee Avenue, which runs north and south. The southernmost of the two duplexes was on the corner of Lee Avenue and an alley that paralleled Broadway. The south apartment of this duplex

was No. 21 and the north apartment was No. 23. There was a small passageway between the southern and the northern duplex and the second house also consisted of two apartments numbered 25 and 27. So that there were four apartments, two in each house, numbered from the alley to Broadway as No. 21, 23, 25, and 27 respectively.

The southernmost duplex was occupied by Mrs. Tikkanen in No. 21 and the plaintiff lived in No. 23. Across the passageway in No. 25 lived Mrs. Branson and her mother, Mrs. Kauhanen, and No. 27 was occupied by one Kauppola. In May 1935 the plaintiff and her husband rented the apartment at No. 23 Lee Avenue from Mr. Virta's agent, Mrs. Magda Syren.

In the back yard to the rear of the two duplexes were three clotheslines. One was attached to the rear of apartment No. 23 and ran diagonally in a southwesterly direction across the yard to a telephone pole on the alley. The second line was attached to the rear of apartment No. 25 and was fastened to the same telephone pole. A short line was attached to the rear of apartment No. 21.

The clothesline at No. 25 consisted of a rope running over pulleys at either end. A small platform was provided to place clothes baskets etc. at the end nearest the house. The record does not reveal the height of the line at the house but the evidence is that it had to be reached by a ladder six or seven feet in height. This ladder was constructed of 2 x 4 uprights with 1 x 4 steps. The top of the ladder was nailed to a 2 x 4 affixed to a traditional brick edifice euphemistically called a lavatory. At the top of the ladder was a board eight inches wide and 20 inches long upon which the person using the clothesline could stand while hanging out clothes.

On November 25, 1935, while the plaintiff was hanging clothes on the line affixed to the rear of No. 25 Lee Avenue, the clothesline broke and she fell a distance of six or seven feet to the ground and suffered the injuries of which she is complaining.

Two grounds of negligence were alleged in the complaint. First, that the defendant and his agents permitted the clothes-

line to become weak and rotten and not in a reasonably safe condition for the use for which it was intended. Second, that defendant permitted, the step-ladder by means of which access was had to the clothesline to become loose from its fastenings against the outbuilding and to become unsteady and not in a reasonably safe condition for use. Defendant pleaded contributory negligence of plaintiff as the sole cause of her injuries.

On the former appeal of this case (Lake v. Emigh, supra) we held that so far as the use of the clothesline was concerned the plaintiff was not guilty of contributory negligence simply because she knew the line was old and worn since she had no means of knowing the extent of its decay or that it was not strong enough to withstand ordinary use for its intended purpose. We further held that as to the ladder the plaintiff must be held as a matter of law to have known of its shaky condition and to have appreciated the danger arising from that condition; that therefore plaintiff was guilty of contributory negligence in using the ladder in its shaky condition and had assumed the risk incident to its use. The case was therefore sent back for a new trial at which we directed that the defective condition of the ladder should be eliminated.

Law of the present case. The decision on the former appeal has become the law of this case as to all matters which were directly involved. in and considered and determined on said appeal. See Finlen v. Heinze, 32 Mont. 354, 366, 80 Pac. 918, and cases cited therein. Also Anderson v. Border, 87 Mont. 4, 8, 285 Pac. 174, 176, in which we said: "* * * as to all points which were directly involved in, and were passed upon, in the former appeal, and which are involved in this case, whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us." Citing Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 281 Pac. 913, in which a long array of Montana cases supporting the above rule are cited.

We will now consider the contentions advanced by defendant.

First, the theory of plaintiff's case was that the use of the defective instrumentalities, including both the ladder and

the clothesline was the proximate cause of plaintiff's injuries and that since on the first appeal the issue as to the defective condition of the ladder was eliminated from consideration it is "beyond human power to say" that the breaking of the clothesline alone was the cause of plaintiff's injuries. We are unable to agree with this contention. As we view the record there is evidence which if believed by the jury warranted a verdict for plaintiff on the theory that her injuries resulted from the defective condition of the clothesline and not from the shaky condition of the ladder. The fact should not be lost sight of in this case that however "shaky" the ladder or its platform, it did not collapse nor give way either before or after plaintiff fell from it. Plaintiff's husband, William Lake, testified that his wife "was hanging out clothes and the clothesline broke and she fell down from that platform, right down to the boardwalk." Mr. Lake witnessed the accident. Looking through the door window he saw the clothes fall "down on the ground." Witness then went out to see what had happened to his wife and he "saw her shaking at the top of the step ladder," and also saw the platform "shaking just a little bit" and in just a second or two plaintiff fell back to the sidewalk. From the above testimony the jury might well have found that the defective ladder which only "shook a little bit" had nothing to do with plaintiff's fall but that plaintiff was precipitated to the ground as the sole result of losing her balance when the defective clothesline broke. Plaintiff herself testified that the rope broke as she was hanging up the clothes; that she had hold of the line and was pushing it forward and that when the line broke she "lost her balance and fell from there." To the same effect was the plaintiff's testimony on cross-examination. She said "I lost my balance because the rope broke and there was no place to take hold and that platform was narrow."

Second, that the breaking of the clothesline was not the proximate cause of plaintiff's injuries because of intervening causes, including the narrow platform, lack of any handhold, and the shaking of the ladder, all of which it is claimed broke

the sequence of events and were new and independent causes of plaintiff's injuries. If the lack of a handhold, the narrowness of the platform and the "shaky" condition of the ladder were contributing causes to plaintiff's injuries, it is sufficient to say that defendant was responsible for all of said causes and it is immaterial which of them was the proximate cause of plaintiff's injuries. 45 C. J. section 487, page 924, states the law as follows: "Where several causes producing an injury are concurrent and each is an efficient cause without which the injury would not have happened, the injury may be attributed to all or any of the causes, and recovery may be had against either or all of the responsible persons, although one of them was more culpable, and the duty owed by them to the injured person was not the same. Where the injury results from two or more causes for all of which defendant is liable, it is immaterial which was the proximate cause." Citing authorities in the accompanying case notes.

Also if it be assumed that the narrow platform, the lack of a ▮ handhold and the shaky condition of the ladder were intervening causes of the plaintiff's injuries we do not regard them as sufficient to break the sequences of events. The entire circumstance of plaintiff's fall occupied only a few seconds and if what happened in those few seconds can be broken down into separate concurrent causes, still that will not nullify defendant's liability for the decedent's negligence. In 45 C. J. 926, section 489, the law is stated as follows: "It is well settled that the mere fact that other causes, conditions, or agencies have intervened between defendant's negligence and the injury for which recovery is sought is not sufficient in law to relieve defendant from liability." Citing numerous authorities in the accompanying case note No. 27.

Third, that the use of the defective clothesline cannot be severed from the use of the remaining defective facilities. This contention was decided adversely to defendant's position on the first appeal of this case when we directed the removal of the issue of the defective condition of the ladder from the considera-

tion of the jury. Also as we have pointed out in the present opinion, it is by no means impossible. On the contrary it was both feasible and warranted by the evidence for the jury to find that the breaking of the defective clothesline was the sole proximate cause of plaintiff's injuries. We are of course aware that a different conclusion may readily be reached but our point is that there was sufficient evidence to warrant the conclusion reached by the jury as disclosed by the verdict.

Fourth, that Virta, the landlord retained no control over the clothesline; that defendant was one of several tenants in common and that under such circumstances the landlord is not liable for injuries for a defect in the premises. The record shows that the clotheslines were reserved by the landlord for the common use of all the tenants. The record discloses that there was no clothesline entirely upon premises rented exclusively to any one tenant. There is direct and uncontradicted testimony that the plaintiff's agent expressly reserved all of the clotheslines for the common use of all four of the tenants. This evidence appears in the transcript on both the first and second trials. William Lake, for example, testified as follows:

"Q. When you went to rent these premises, your apartment, was anything pointed out to you as the place to hang the family wash or laundry? A. Yes. Mrs. Syren opened up the door and showed the north line and the south line and told us we could use either one that is not in use."

Again the same witness testified:

"Now while you were living in the apartment that you told the jury about did the people that lived in those apartments use those lines every wash day hanging clothes? A. All those apartments they used either line that came empty; and they had clothes enough for two lines they used them too."

To the same effect was plaintiff's testimony that when they rented the property at 25 Lee Avenue certain parts of the premises were used in common with the other tenants, namely, the "parts where we hung the clothes" and that she and the other tenants used the same clothesline.

Mere common user does not create a tenancy in common but where there is a reservation by the landlord of a part of the leased property for the common use of the different tenants, we stated the law as follows on the former appeal [167 Pac. (2d) 578]:

"The rule is well established that where the owner of premises leases parts thereof to different tenants, reserving other parts for the common use of the different tenants, it is his duty to use reasonable care to keep the parts reserved for common use reasonably safe. 32 Am. Jur., 'Landlord and Tenant,' sec. 688; 2 Restatement, Torts, sec. 360.

"This rule includes appliances for hanging clothes when used in common by the several tenants. Tracey v. Page, 201 Mass. 62, 87 N. E. 491; Sizse v. Wegmann, 169 App. Div. 112, 154 N. Y. S. 825; Hanselman v. Broad, 113 App. Div. 447, 99 N. Y. S. 404; 36 C. J. 217, note 23."

The law in this respect is also stated in 52 C. J. S., Landlord and Tenant, sec. 417, as follows: "As a general rule the landlord is liable for personal injuries sustained by reason of his failure to keep the portions of the premises reserved for common use in a reasonably safe condition * * *."

"Under the general rule * * * where several tenants have a right to use a common yard, as appurtenant to the premises rented to them * * * the landlord will be liable for any injuries sustained by them owing to a defect in the common premises * * *." (52 C. J. S. 38.)

The rules stated above are applied by the author to clotheslines in 52 C. J. S., page 41.

We do not controvert the general rule stressed in the dissent- ing opinion that a landlord owes no legal duty to maintain leased premises in a suitable state of repair. However, so far as the clothesline involved in this case is concerned, it was reserved for the common use of all the tenants and was therefore not within the rule stated in the dissenting opinion.

Instructions. We will now consider the instructions given and those refused by the trial court, having in mind our direc-

tion to the lower court to eliminate the defective condition of the ladder from consideration by the jury.

Instructions 1 to 14 inclusive were given without objection.

Instruction No. 15 offered by the plaintiff and modified by ▮ the court related to the duty of the landlord to keep the clothesline in a reasonably safe condition for use and, we think, correctly stated the law. The defects which existed in the clothesline were not, under the evidence, patent defects either at the time plaintiff's husband rented the premises or on the date of plaintiff's injury. It was of course readily apparent that the rope was weather-beaten. It was not, however, apparent to what extent the line had been weakened nor whether it would withstand the strain which might be placed on it in the ordinary use for which it was intended.

Instruction No. 16. For the same reason, namely, that the defects existing in the facility did not appear at the time the premises were rented, we think this instruction was properly given.

Instruction No. 18. This instruction was in accord with our ▮ direction to the trial court to remove entirely from the consideration of the jury the question of plaintiff's negligence as to the use of the ladder upon which question this court held that plaintiff was guilty of contributory negligence. The instruction in effect sent the case to the jury to decide whether the breaking of the clothesline and the shaking of the ladder concurred as a proximate cause of plaintiff's fall from the ladder and whether, without the breaking of the clothesline, the plaintiff would have fallen. If the jury found that these two did concur in causing plaintiff to fall from the ladder and that without the breaking of the clothesline plaintiff would not have fallen, then the jury were told to return a verdict for the plaintiff if they believed that plaintiff was free from contributory negligence or assumption of risk of injury on her part. We think this instruction read as it must be as a part of the entire instructions given, and particularly instructions 1A and 4A inclusive, correctly stated the law of the case.

Instructions 1A and 5A. We do not find that the objections urged against these instructions have substantial merit.

Defendant's requested instruction 8A was also properly refused. The issue as to plaintiff's contributory negligence, if any, in using the defective ladder had been removed entirely from the consideration of the jury. (Instruction No. 18 given in accordance with the holding of this court on the first appeal.) The offered instruction was in effect an invitation to the jury to consider plaintiff's negligence if any in using the ladder in its defective condition. This instruction was contrary to the instruction above noted as well as to the determination of this court.

We have considered appellant's objections to instructions 17, 1A and 5A given by the court and also his objections to the refusal of the court to give his requested instructions Nos. 7A and 9A and find them without merit. In our opinion the able trial judge properly tried the case and correctly instructed the jury in accordance with our previous opinion.

In view of the conclusions expressed herein, and finding no error, the judgment of the lower court is affirmed.

On motion for rehearing the opinion promulgated herein on the 6th day of Decmber 1947, is withdrawn and this opinion substituted therefor.

Associate Justices Angstman and Metcalf concur.

Mr. Justice Gibson not participating.

Mr. Chief Justice Adair:

I dissent. The opinion of my associates establishes a new, far-reaching and dangerous precedent. In the absence of statute or covenant to repair, it holds the owner of real property liable for personal injuries resulting from patent and simple defects existing on premises not rented to plaintiff but outside and beyond the premises leased to her. It makes a landlord responsible not only for the strength and efficiency of a clothesline on the demised premises but also for the strength and efficiency of a clothesline beyond and without the property leased to and occupied by his tenant. It makes the landlord an insurer of the

safety of his tenant while such tenant foregoes the use of a serviceable clothesline on the demised premises to use one in her neighbor's yard and appurtenant to her neighbor's apartment.

While standing on a small wooden platform nailed to the top of a six or seven foot ladder hanging her washing on a rope clothesline attached to the rear of a house adjoining the one in which she was a tenant, plaintiff, Tyyne Lake, a woman aged 35, upon the breaking of the clothesline, *lost her balance* and fell from the platform to a board walk beneath, injuring her back. Eight years later she brought this action to recover damages from the administrator of the estate of Eli Virta, the owner of the premises on which the ladder and clothesline were situate as well as of the adjoining house where plaintiff had lived as a tenant.

Eli Virta, a resident of Seattle, Washington, owned certain houses in the city of Butte, Montana. Two of these were two family one story houses. They faced east and were situate on the westerly side of Lee Avenue which runs in a northerly southerly direction. Each house was separate with a space of about three feet between. Each set of living quarters in each house was leased to a different tenant.

North House. The house to the north was known and designated as No. 25 Lee Avenue and No. 27 Lee Avenue. The north apartment therein designated as No. 27 Lee Avenue was leased to and occupied by a tenant named Kauppola.

The south apartment therein designated as No. 25 Lee Avenue was leased to and occupied by Mrs. Lilly Branson and her mother and at the rear thereof was an outside rope clothesline referred to as "the north line."

South House. The house situate to the south was built adjacent to an alley intersecting Lee Avenue and was known and designated as No. 21 Lee Avenue and No. 23 Lee Avenue.

The premises at No. 21 Lee Avenue, being those to the south and next to the alley were leased to and occupied by Mrs. Tik-

kanen. Attached to the rear wall of these premises was an outside rope clothesline.

The premises at No. 23 Lee Avenue, was the north apartment in the south house. Attached to the rear wall of these premises was an outside rope clothesline referred to as "the south line."

In May 1935 the plaintiff and her husband, after making a personal inspection of the premises at No. 23 Lee Avenue, moved into the apartment and occupied same until some time in the fall of 1936 when they moved to East Mercury street in Butte. No lease agreement, either written or oral, appears in the evidence. No terms or provisions of any lease agreement between the owner Virta and plaintiff or her husband is either pleaded or proven herein and there is no evidence as to what if any rent plaintiff or her husband either paid or agreed to pay for the use of the premises.

Plaintiff's husband testified:

"Q. Was the house you lived in the first one you would come to if you would walk down from Broadway, or the second? A. That one I was living in was the second house from Broadway.

"Q. Were there some other houses there, too? A. Yes.

"Q. What was the numbers of those? A. That was 21 next to the alley and north of that house was 23 and then the next building was 25, and next to my place was—I said wrong. My place was 23 and then next to my place was 25 and then the third apartment to the north was 27, and there was one marked 21 in the alley. * * *

"Q. Now, from whom did you rent the apartment 23?. A. I rented it from Mrs. Syren.

"Q. And that is the same lady we referred to? A. Yes.

"Q. And do you know who the landlord was? A. I know it was Eli Virta.

"Q. Did Eli Virta live in Butte then or not? A. No. he lived in Seattle.

"Q. In the back of these two houses, was there a back door? A. Yes, there was two doors."

South Clothesline. One end of the clothesline (called the south line) on the premises at No. 23 Lee Avenue in Virta's south house, was fastened to the rear wall of the apartment occupied by the plaintiff and her husband and the other end of the line was attached to a telephone pole at the rear of the premises. This clothesline extended above an iron-roofed shed. Plaintiff testified:

"Q. Will you describe how you got up to the south line and what you would stand on when you were hanging clothes on the south line? A. There was a step there to go up on and from that step you had to climb onto the roof.

"Q. Was the roof level or was it steep? A. It was a corrugated iron."

Plaintiff's husband testified: "The south side line was nailed against the 2 by 4 and the 2 by 4 nailed against the 23 Lee avenue wall was the line running over the wood shed roof."

North Clothesline. The clothesline at the rear of Mrs. Branson's home at No. 25 Lee Avenue in Virta's north house was a very simple affair consisting of a rope operating over two pulleys. One of the pulleys was attached to a 2 x 4 extending from the rear wall of the Branson apartment at No. 25 Lee Avenue to the outside wall of the lavatory belonging to the Branson apartment and at the rear thereof. The other pulley was attached to a telephone pole located about 70 to 100 feet southwesterly from Mrs. Branson's lavatory.

The Ladder. Leaning against the outside wall of Mrs. Branson's lavatory was a six or seven foot wooden ladder. Plaintiff's husband, William Lake, testified:

"Q. Now, where was this lavatory you speak about? A. That was lavatory for the 25 apartment building.

"Q. Was it in the back of 25? A. Yes, back yard from 25."
Again:

"Now then, was the lavatory outside the house? A. That is built outside the house.

"Q. And close to the back door? A. And close to 25 back door."

The Platform. Against the wall of the Branson lavatory and nailed to the top of the ladder was a flat wooden platform eight inches wide and about 20 inches long. The wall of the lavatory was considerably higher than the platform at the top of the ladder so that a person standing on the narrow platform could not reach the top of the wall. There were no railings or handholds on the wall or around the platform so there was nothing for a person standing on the platform to take hold of.

The Accident. Plaintiff's testimony is to the effect that on the afternoon of November 25, 1935, she was hanging her family wash on the north clothesline at the rear of Mrs. Branson's apartment in Virta's north house at No. 25 Lee Avenue; facing the wall of the Branson lavatory and with her back toward the telephone pole, she climbed the ladder with a basket of wet clothes; she first placed her clothes basket on the narrow platform at the top of the ladder and then pushed the basket to a smaller platform at the side of the ladder; she then climbed to the platform at the top of the ladder turned about thereon so that she was then standing on the eight inch by 20 inch platform with her back to the lavatory wall and her face toward the telephone pole taking clothes from the basket, pinning them to the rope line and then pushing the line and clothes pinned thereto forward and away from her toward the telephone pole. When plaintiff had placed about 50 feet of wet clothes on the line and while she was using both her hands in pushing the rope from her and while her hands were extended forward as far as she could reach, the line parted at a point about midway between the lavatory and telephone pole. Thereupon plaintiff *lost her balance* and, after shaking on the platform for a second or two, she fell to the ground and, according to paragraph 4 of her complaint, *"against the steps leading into the real property, owned by Eli Virta."*

The plaintiff and her husband leased and occupied the apartment at No. 23 Lee Avenue in Virta's south house but they did not lease nor did they occupy the apartment at No. 25 Lee Avenue in Virta's north house. Notwithstanding, plaintiff tes-

tified that she had used the north clothespine at the rear of the north house on the premises at No. 25 Lee Avenue rented to Mrs. Branson almost every week from May 1935 to November 25, 1935. Thus had she repeatedly climbed the ladder and used the north clothesline, pinning clothes thereto, pushing the rope along, passing it through her hands, seeing it and feeling of it. Plaintiff testified that she had observed that the rope clothesline was old, dark, weatherworn and that it had been spliced in two or three places.

There is no evidence that plaintiff on the day she was injured made any use whatever of the south clothesline so attached to the rear wall of the apartment (No. 23 Lee Avenue) and building of which she was a tenant. She appeared to be somewhat partial to the higher clothesline on the premises to the north which were leased to Mrs. Branson although she testified: "I used both lines most every week, but I always took the north line first because I had a bigger wash to put there, that is sheets and bedding and so on."

There have been two separate trials of this action in the district court before different juries. Each trial resulted in judgment on verdict for plaintiff. From each judgment defendant appealed to this court. The opinion of this court on the former appeal is found in 118 Mont. 325, 167 Pac. (2d) 575. There this court held, as a matter of law, that plaintiff was guilty of contributory negligence or she had assumed the risk incident to her use of the ladder. Because of such finding the judgment for plaintiff could not stand. Accordingly that judgment was reversed. On the present appeal plaintiff continues guilty of the same contributory negligence which defeated her recovery before. Again, as a matter of law, must she be held to have assumed the risk incident to the use of the ladder. Again do these findings bar recovery, so that under the law the second judgment for plaintiff may not stand. If this were not so what has been accomplished by the first appeal? What did the former opinion determine other than that the judgment for plaintiff could not stand because her evidence established as a mat-

ter of law that she was guilty of contributory negligence or that she had assumed the risk incident to the use of the ladder from the top whereof she fell and was injured? Such was the law declared on the first appeal.

The issues at each trial were the same as each trial was had upon precisely the same pleadings. That the issues may be clearly understood the essential allegations of the various pleadings are here set forth.

Complaint. The complaint avers:

That Eli Virta was the owner of real property which he leased to several tenants, among them the plaintiff, "which said property was numbered 23 Lee avenue, Butte, Montana, and 476 East Broadway, Butte, Montana.* * * and plaintiff was a tenant of Eli Virta, her landlord";

"3. That on the 25th day of November, 1935, and for more than one year prior thereto the said Eli Virta, provided for the common use of the tenants of the property which he owned in Butte, Montana, at number 25 Lee Avenue and 476 East Broadway, Butte, Montana, a mechanical device and apparatus for hanging clothes to dry, consisting of a clothes line running over pulleys fastened between the buildings and outbuildings of said premises and, *as a part of said apparatus said Eli Virta provided a ladder with steps and a small platform at the top thereof* for placing baskets of clothes, so that said clothes line could be reached by the tenants while hanging out clothes to dry, *from the top steps of said ladder; said ladder was attached* to one of the out buildings and the said mechanical device, clothes line, *ladder* and entire apparatus was maintained by said Eli Virta, as landlord, for the use of his tenants and particularly for the use of the plaintiff herein;

"4. That on or about the 25th day of November, 1935, *the plaintiff climbed up said ladder* with a basket of washed clothes *which she placed on the small platform at the top of the ladder* and proceeded to hang the clothes on said clothes line to dry, according to the method and the use of said apparatus in the manner in which it was intended to be used by said Eli Virta;

that in the exercise of reasonable care on her part, while she was then and there using said apparatus, it appeared to her to be safe and secure, but, as the proximate result of the negligence of the said Eli Virta, his agents and employees, in the maintenance of said apparatus, as hereinafter alleged, the same was not safe and secure, but, on the contrary, said clothes line was rotten and *said ladder was loosened from its supports and unsteady,* so that as a proximate result of the negligence of Eli Virta, his agents and employees, in the maintenance of said apparatus, as hereinafter alleged, said clothes line broke, as plaintiff was in the act of hanging clothes thereon and the breaking thereof, *together with the unsteady condition of said ladder, caused plaintiff to be thrown to the ground* and against the steps leading into the real property, owned by Eli Virta, *from said ladder,* a distance of from seven to eight feet, *which caused her to suffer and sustain the injuries hereinafter set forth;*

"5. That the aforesaid negligence of the said Eli Virta, which proximately caused the injuries to the plaintiff, hereinafter set forth, was as follows: The said Eli Virta, his agents and employees, acting in the scope of their agency and employment, in the maintenance of the aforesaid apparatus, negligently suffered and permitted said clothes line to become weak and rotten *and said step ladder to become loose from its fastenings* against said outbuilding *and to become unsteady;* said Eli Virta, his agents and employees, as aforesaid, negligently failed to furnish a sound and sufficient clothesline with said apparatus *and negligently failed to keep said ladder securely fastened* against said outbuilding; said Eli Virta, his agents and employees, as aforesaid, negligently failed to make reasonable inspection of said apparatus and thus negligently failed to keep said apparatus, which was furnished for the use of his several tenants, in a reasonably safe condition for the use for which it was intended; that said Eli Virta, his agents and employees, while acting in the course and within the scope of their agency and employment by said Eli Virta, in the maintenance of said apparatus, knew, or, in the exercise of reasonable care and diligence, should have

known of the condition of said clothes line *and ladder* above described for several weeks before the 25th day of November, 1935, which was sufficient time, in the exercise of reasonable care and diligence, for said Eli Virta, his agents and employees, as aforesaid, to make said apparatus safe and secure and keep it so;

"6. That *as the proximate result of the aforesaid negligence and being precipitated from said ladder to the ground and against said steps,* plaintiff sustained" injuries particularly described to her damage in the sum of $20,000. (Emphasis supplied.)

A general demurrer to the complaint interposed by defendant was overruled. There is no averment in the complaint that under the alleged contract of lease the landlord agreed to repair and in "the absence of an agreement in the lease binding the landlord to put or keep the premises in repair, he is not liable in damages for failure to do so or for injuries sustained by the tenant by reason thereof." (Glenn v. Hill, 210 Mo. 291, 109 S. W. 27, 28, 16 L. R. A., N. S., 699.)

Answer. Defendant filed an answer setting forth two defenses.

The first defense admitted that at the time of the alleged accident Eli Virta was the owner of the property described in the complaint and, on information and belief admitted that on the date alleged the plaintiff fell to the ground while hanging clothes on a line but denied the other allegations of the complaint.

For a second defense the defendant pleaded the contributory negligence of plaintiff as follows:

"1. That if the said clothes line, referred to in Plaintiff's Complaint was rotten and defective as in Plaintiff's Complaint alleged and *if the ladder* approaching the same *was loosened from its supports and unsteady* as in Plaintiff's Complaint alleged, *each and all of these facts were apparent to the Plaintiff* or would have been apparent to the Plaintiff in the exercise of ordinary and reasonable care and diligence and that the said Plaintiff did carelessly and negligently and without due care and circumspection for her own safety, *attempt to use said*

clothes line and *ladder* without regarding the condition thereof, and did, as Plaintiff is informed and believes, well knowing said clothes line was worn and defective, and well knowing the same, was installed for the purpose of hanging clothes thereon, and for no other purpose, and that said clothes line was designed and calculated to support only a normal weight of clothes hung to dry thereon, and was obviously not designed to support the weight of a human being, *notwithstanding the obvious condition of said* clothes line and *ladder* aforesaid, carelessly and negligently attempt to use the same and likewise carelessly and negligently did attempt to use the same in a manner in which the same were not intended to be used and did carelessly and negligently lean and rest her weight upon said clothes line, thereby causing the same to break, throwing Plaintiff off balance and causing her to fall to the ground, thereby causing the injuries, if any, by her complained of; that said accident was caused and said injuries suffered by Plaintiff by reason of the negligence of Plaintiff, as aforesaid, which contributed directly and proximately to the accident and injuries complained of in her complaint, and without which said contributory negligence of Plaintiff as aforesaid, said accident would have happened and said injuries would not have been suffered.''

Reply. The plaintiff filed a reply to the allegations of the second defense set forth in the answer wherein ''plaintiff admits that said clothes line apparatus was installed for the purpose of hanging clothes thereon and that said clothes line was designed and calculated to support a normal weight of clothes hung to dry thereon and not designed to support the weight of a human being and plaintiff denies each and every other allegation and all other allegations contained in said paragraph one of said alleged second defense.''

*Contributory Negligence as a Matter of Law.* On appeal from the judgment entered at the first trial, this court (Lake v. Emigh. 118 Mont. 325, 167 Pac. (2d) 575, 578, decided February 5, 1946), sustained the second defense pleaded by defendant, namely, the defense of contributory negligence and expressly

found and held *as a matter of law* that plaintiff was guilty of contributory negligence in using the ladder on which she was standing and from which she fell. There this court said: "It should be noted that the ladder did not collapse but its only alleged contribution to plaintiff's injury was due to the fact that it shook. Plaintiff's husband so far as the record discloses used the ladder but once and he observed its shaky condition. Others who used it testified in substance that its shaky condition was readily apparent to those who used it. We think it must be held *as a matter of law* that plaintiff knew or in the exercise of reasonable care for her own safety should have known of the shaky condition of the ladder before using it. *She must be held to have appreciated the danger from its shaky condition so far as that condition contributed to her fall. She was thus guilty of contributory negligence in using the ladder in its shaky condition* or she assumed the risk incident to its use." (Emphasis supplied.)

It is the rule in this jurisdiction, "that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time, in the exercise of due care, he has failed to make out a case for the jury." (George v. Northern Pac. Ry. Co., 59 Mont. 162, 171, 196 Pac. 869, 870.)

"Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of." (Leary v. Anaconda Copper Min. Co., 36 Mont. 157, 163, 92 Pac. 477, 478, approved in Pilgeram v. Haas, 118 Mont. 431, 167 Pac. (2d) 339, at page 349.)

Contributory negligence is used in its legal signification in the former opinion which "held as a matter of law that plaintiff * * * was thus guilty of contributory negligence in using the ladder in its shaky condition."

Thereby this court in effect found and determined that plaintiff's evidence made out a clear case of contributory negligence

(1 Shearman & Redfield on Negligence (Rev. Ed.), p. 316, sec. 129) and that it "is of such a character that it will support no other legitimate inference." (Fulton v. Choteau County Farmers' Co., 98 Mont. 48, 68, 37 Pac. (2d) 1025, 1031. The legal effect of the holding is to completely defeat and bar recovery by plaintiff in this action. (Rau v. Northern Pac. Ry. Co., 87 Mont. 521, 289 Pac. 580; Grant v. Chicago, M. & St. P. Ry. Co., 78 Mont. 97, 111, 252 Pac. 382; Thurman v. Pittsburgh & Montana Copper Co., 41 Mont. 141, 108 Pac. 588; Frank v. McCarthy, 112 Utah 422, 188 Pac. (2d) 737.)

In Page v. New York Realty Co., 59 Mont. 305, 326, 196 Pac. 871, 878, this court said: "Assuming the defendant guilty of negligence, from all of the evidence introduced it does not appear that the decedent at the time of the accident, exercised due care for his own safety, and therefore a case for the jury was not made. Applying decisions of our court to the evidence introduced in this case, there is but one conclusion, and that is that the carelessness and negligence of the decedent was a proximate cause of his injury and resultant death. His contributory negligence, under the evidence, is proper for decision as a matter of law, rather than one of fact." Again in Carey v. Guest, 78 Mont. 415, 426, 258 Pac. 236, 239, this court said: "Of course, if defendant was negligent in any of the specified particulars, and yet if a preponderance of the evidence shows plaintiff to have been guilty of contributory negligence, he should not have prevailed."

Whenever the plaintiff's own case presents evidence which, if unexplained, would make out prima facie contributory negligence on his part, there must be further evidence exculpating him, or he cannot recover. (Harrington v. Butte etc. Ry. Co., 37 Mont. 169, 173, 95 Pac. 8, 16 L. R. A., N. S., 395; Mechan v. Great Northern Ry. Co., 43 Mont. 72, 114 Pac. 781; Lynes v. Northern Pac. Ry. Co., 43 Mont. 317, 117 Pac. 81, Ann. Cas. 1912C, 183. Compare Maring v. City of Billings, 115 Mont. 249, 142 Pac. (2d) 361, and Armstrong v. Billings, 86 Mont. 228, 283 Pac. 226.)

In Cummings v. Helena & Livingston Smelting & Reduction Co., 26 Mont. 434, 451, 68 Pac. 852, 856, involving liability of the master to a servant, plaintiff, an underground miner, by stooping and kneeling got under a ledge without first inspecting or sounding it. While he was in the act of rising, part of the ledge fell upon him causing the injuries complained of. In affirming a judgment of nonsuit the court said: "Extraordinary care was not required of him; but the slightest want of ordinary care on his part was negligence which, if it contributed directly to the injury, defeats the action. The plaintiff cannot recover if he could have avoided the injury by exercising ordinary care and caution. * * * The defendant was not required to take better care of plaintiff than the plaintiff was of himself the measure of the duty of each was ordinary care. The negligence of the defendant did not dispense with the necessity of the plaintiff's using ordinary care. Such has been the unbroken rule since Butterfield v. Forrester, 11 East. 60, was decided, to the present day. * * * The accident would not have happened had the plaintiff exercised due care and caution. His failure in that respect was an immediate cause of the injury. * * * In proving the circumstances of the accident and injury, he succeeded in establishing for his adversary the defense of contributory, or concurrent, negligence. * * * A nonsuit was therefore properly granted. We are aware of the rule that the question whether this defense has been made out is usually for the jury to decide. The case at bar is clearly one of the exceptions."

The determination that *as a matter of law* plaintiff was guilty of contributory negligence in using the ladder on which she was standing when she *lost her balance* and fell ends plaintiff's law suit. Upon making such determination it became and was the unpleasant duty of this court under the law to order the judgment reversed with directions to enter judgment in favor of the defendant as was done under similar circumstances in Page v. New York Realty Co., supra. This disagreeable task

imposed upon this court by law it failed to perform on the former appeal.

Elimination of Defense of Contributory Negligence. Failing to recognize that plaintiff's contributory negligence established by her own evidence was and is a complete defense to plaintiff's law suit, this court directed that the cause be remanded for a new trial "at which the *defective condition of the ladder should be eliminated* because, as above pointed out, plaintiff cannot take advantage of failure in that regard because she knew or was chargeable with knowledge of its condition and any injury flowing from its shaking is chargeable to her own negligence and the risk of injury therefrom was assumed by her." (Emphasis supplied.)

The opinion on the former appeal, 118 Mont. 325 [167 Pac. (2d) 578], conjectures as to whether "the jury would have found for plaintiff were it confined to the consideration of negligence with respect to the clothesline alone" and suggests that on a new trial of the action "the defective condition of the ladder should be eliminated."

As shown above, paragraph 4 of the complaint charges that as a proximate result of the negligence of Eli Virta, the landlord, in the maintenance of the clothesline *and ladder,* the "clothes line broke as plaintiff was in the act of hanging clothes thereon and the breaking thereof, *together with the unsteady condition of said ladder caused plaintiff to be thrown to the ground* and against the steps leading into the real property, owned by Eli Virta, *from said ladder,* a distance of from seven to eight feet, which caused her to suffer and sustain the injuries hereinafter set forth." One of the defenses specially pleaded by defendant was the contributory negligence of plaintiff in attempting to use the ladder in its then obvious condition.

The right of a defendant to rely upon the defense of contributory negligence so specially pleaded by him, is a substantial and well established right of which, when properly asserted as here, the defendant may not be deprived by this or any other court. This court had and it has no authority whatever to direct

or even to suggest that at the second trial of this case "the defective condition of the ladder should be eliminated." This court may not thus eliminate from the case a legitimate defense properly pleaded and interposed by defendant. Nor may the defense be frittered away by the jury. (Monongahela City v. Fischer, 111 Pa. 9, 14, 2 A. 87, 56 Am. Rep. 241. See also Goff v. Borough of College Hill, 299 Pa. 343, 149 A. 477; Pawlisch v. Atkins, 96 Ind. App. 132, 182 N. E. 636.)

Plaintiff's negligence need not be the sole cause of her injury. It is sufficient if her negligence is a proximate cause. (Wastl v. Montana Union Ry. Co., 24 Mont. 159, 176, 61 Pac. 9; Leary v. Anaconda Copper Min. Co., supra; Godwin v. Atlantic Coast Line R. Co., 220 N. C. 281, 17 S. E. (2d) 137; Wheeler v. Nickels, 168 Or. 604, 126 Pac. (2d) 32.)

In Hughey v. Fergus County, 98 Mont. 98, 37 Pac. (2d) 1035, this court expressly declared that the comparative negligence doctrine is not applicable in this jurisdiction. In 38 Am. Jur., "Negligence," page 852, section 175, it is said: "Until a method is devised of apportioning or dividing the damages, * * * so as to permit a recovery on the basis of comparative negligence, the law must leave where it finds them a plaintiff and defendant who are both at fault, and deny the plaintiff a recovery." To same effect see Sayeg v. Kansas Gas & Electric Co., 156 Kan. 65, 131 Pac. (2d) 648.

This court's direction or suggestion that on a new trial "the defective condition of the ladder should be eliminated" and its inquiry as to what the jury would have found "were it confined to the consideration of negligence with respect to the clothesline alone" are not only obiter dicta but also patently erroneous and misleading. Such dicta cuts off and denies to defendant a valid and complete defense to the action against him which defense this court has once determined to have been established as a matter of law in this case by plaintiff's own evidence. Further, the dicta wrongfully interposes an insurmountable obstacle to a full contestation of the issues presented by the pleadings in the case and, without any justification therefor,

it takes from the trial court and from the jury questions of both fact and law on which the defendant must and on which he did rely as a legitimate and absolute defense to this action so prosecuted against him.

Condition of Ladder Still in Issue. At the new trial had pursuant to the order of this court the plaintiff ignored and wholly failed to follow the suggestion made that "the defective condition of the ladder should be eliminated." The plaintiff did not eliminate such condition from either her pleadings or proof. Her complaint and reply were not amended in any particular. Each reads precisely as it read at the first trial. In the introduction of her evidence the plaintiff again ignored the suggestion to eliminate the defective condition of the ladder. Three of her witnesses were examined and testified to the alleged shaky and unsteady condition of the ladder.

Mrs. Branson, a witness for plaintiff, testified that the ladder was unsteady. It was admitted that at the first trial this witness had testified that it was "shaky."

Plaintiff's husband, William Lake, testified he had climbed up the ladder a few weeks prior to the day his wife was injured and that in descending he nearly fell as "the ladder was shaking." It was admitted that at the first trial he had testified to this same condition. He testified that he thought the place where the clothesline broke was a little better than half way to the telephone pole and that he thought his wife then had about half or a little more of her clothes on the line. Plaintiff did not fall with the clothesline. After it had fallen to the ground plaintiff still remained on the narrow platform at the top of the ladder shaking and then in "a second or two she fell." Her husband testified: "At that time, when the line broke, I had a little dog in the house and he wanted to go out and I go to open up the door so I seen through the door window the clothes fell down on the ground and I was sure the clothes line broke; *and then I went out and looked what happened to my wife, so I see her shaking at the top of the step ladder,* and I see the plat-

form shaking a little bit *and in just a second or two she fell back to the board walk.*

"Q. So you tell the jury that this clothes line broke as she was doing what? A. She was hanging clothes.

"Q. And I think you indicated that she was pushing the line ahead at the time getting the clothes ready to hang up. A. Yes. She was just pushing the line ahead and she was starting to take the clothes and then—"

The plaintiff Tyyne Lake testified that while on the platform at the top of the ladder she *became overbalanced* and fell. Further, *"When I lost my balance* I felt the ladder shake * * * the line broke and the ladder began to shake and I fell." She admitted she knew the ladder was unsafe.

Impossible to Eliminate Condition of Ladder. It was and is impossible to eliminate the ladder or its condition from this case. The condition of the ladder cannot be segregated from the condition of the clothesline. Each tool or implement was but an essential part of the clothes drying equipment and the role that it played in causing or contributing to the loss of plaintiff's balance, her fall and the resulting injuries cannot be separately measured, apportioned or eliminated. Without using the ladder the plaintiff could neither reach nor use the clothesline. It was the ladder that supported her weight and enabled her to stand six or seven feet above the ground as she hung her clothes on the line. The elimination of the ladder would be the elimination of that support and leave plaintiff suspended in the air like a "flying saucer" with no means to sustain her as she attempted to use the clothesline. According to the allegations of paragraph 4 of her complaint, supra, the breaking of the line, "together with the unsteady condition of said ladder, caused plaintiff to be thrown to the ground * * * *from said ladder,* a distance of from seven to eight feet, which caused her to suffer and sustain the injuries hereinafter set forth." It was "from said ladder" that plaintiff fell and not from the clothesline suspended high above the ladder. It was the ladder that was intended and designed to support plaintiff as she first climbed and later stood

thereon. The pleadings of both parties concede that the clothesline "was designed and calculated to support a normal weight of clothes hung to dry thereon *and not designed to support the weight of a human being*" (see plaintiff's reply, supra) so that if plaintiff used the line to support her weight, or as a hand hold or as a means of maintaining her equilibrium or steadying herself while hanging out her wash she was using same for a purpose for which it was not intended and she will be held responsible for injuries resulting to her from the breaking of the line under the added strain of such misuse.

Plaintiff's complaint specifically charges that the fall from said ladder to the ground produced her injuries. Without the fall there would have been no injuries and no lawsuit and without the ladder which plaintiff climbed and on which she stood and depended for her support there would have been no fall. The elimination therefore of the ladder and its condition would be the elimination of a most material and essential part of plaintiff's complaint and case as well as the elimination of most material parts of defendant's answer including the affirmative specially pleaded defense of contributory negligence. This but illustrates how impossible it was to eliminate from this case the alleged defective condition of the ladder or to comply with this court's direction that such issue be eliminated at the second trial.

Law of the Case. The law of the case, as established by the opinion of this court on the former appeal, was that in an action for damages grounded upon the alleged negligence of defendant, a judgment for plaintiff cannot stand nor may recovery be allowed where plaintiff's evidence shows her to have been guilty of contributory negligence or to have assumed the risk incident to the use of a patently defective ladder from which she fell and became injured. In the former opinion it is "held as a matter of law that plaintiff * * * was thus guilty of contributory negligence in using the ladder in its shaky condition or she assumed the risk incident to its use." This holding became, was and is the law of the case. This court laid down that law and it should abide by it.

What was said regarding plaintiff's use of the ladder applies to her use of the rope clothesline. Its condition was obvious and no one was in a better position to know and appreciate its actual condition than plaintiff who admits that she had been using and handling the line each week for six months or more immediately preceding the accident. She could not close her eyes to its patent defects. The finding and determination that as a matter of law plaintiff was guilty of contributory negligence sustained defendant's affirmative defense and called for a dismissal of the action and not for a new trial "at which the defective condition of the ladder should be eliminated." Having fallen into error in directing the elimination of the defective condition of the ladder, this court should here and now in this proceeding wherein its jurisdiction is unquestioned, immediately get back on the beam and not fall in line with those courts that "live by correcting the errors of others and adhering to their own." (Ellison v. Georgia etc. Co., 87 Ga. 691, 13 S. E. 809, 810.)

When a plaintiff seeks to possess himself of money from a defendant's pocket, that plaintiff should be saddled with a complete and not merely a partial duty to show that he is entitled to that money. If he was negligent, and if his negligence contributed to the happening of the accident, he would not be entitled to a cent (in the absence, of course, of statutory meddling). Contributory negligence on his part would be no less effective than freedom from negligence on defendant's part to defeat his action. (Shearman & Redfield on Negligence (Rev. Ed., 7th), p. 303, sec. 124).

Erroneous Instructions. The court's instructions 15 and 17 given over defendant's objections instruct the jury as a matter of law that it could not consider the defects in the ladder and in the platform at the top thereof from which plaintiff fell, as an intervening proximate cause of plaintiff's injuries. Why may the jury not consider and determine this specific issue presented by the pleadings in this case?

The court's instruction 18 given over defendant's objection

concludes with the sentence: "The question of negligence, if any, as to the ladder is removed entirely from your consideration." How may such question be removed from the jury's consideration? The pleadings present such question as an issue to be decided in this case. At the trial the plaintiff treated the question as a material issue in the case and introduced in evidence the testimony of three witnesses to establish her contentions respecting such issue. Plaintiff used the ladder, first to get off the ground,—second, to get within reach of the clothesline, and third, to support and sustain her while she used the clothesline. Plaintiff fell from the top of the ladder to the ground beneath and became injured. It was this use of the ladder by her in its then obvious condition that defendant charges as contributory negligence and as being a proximate cause of plaintiff's injuries. Under such pleadings and evidence by what right does the trial court or this court or any other tribunal say to the jury: "The question of negligence, if any, as to the ladder is removed entirely from your consideration"?

The above instructions are most erroneous and prejudicial. They do not correctly state either the law or practice in this jurisdiction. No court has the right to thus cut off and rule out of the case a specially pleaded legitimate defense amply established as a matter of law by plaintiff's own evidence. Defendant introduced no evidence. Plaintiff's own case admittedly shows as a matter of law that she was guilty of contributory negligence and this defeats her action and bars recovery.

Assumption of Risk. In its opinion on the former appeal this court asserts that in using the ladder plaintiff "assumed the risk incident to its use" and that "the risk of injury therefrom was assumed by her."

Assumption of risk and contributory negligence are distinct defenses. Assumption of risk rests in contract or upon the principle expressed by the maxim volenti non fit injuria whereas contributory negligence rests in tort or an omission of duty. "The defenses of contributory negligence and assumption of risk are entirely inconsistent with each other, and do not rest

upon the same principles; and the existence of one necessarily excludes the existence of the other. (Citing authorities). If the defense of the assumption of risk is maintained, the question of the existence of contributory negligence does not arise, because, if plaintiff assumed the risks of the employment, he cannot recover, even if he exercised the highest degree of care." (Ball v. Gussenhoven, 29 Mont. 321, 328, 74 Pac. 871, 873.)

Ordinarily assumption of risk is a doctrine applicable to the relationship of master and servant where the law imposes upon the master the duty to exercise reasonable care to provide his servant with reasonably safe working tools and keep them in a reasonably safe condition.

Simple Tools. "The master is not required to inspect simple appliances, such as hammers, saws, spades, hoes, lanterns, push sticks, and the like, the character and use of which are understood by all alike. A tool of this class is so simple in its construction and so well understood by men of ordinary intelligence that it would seem absurd to say that the master should make a careful inspection of it before he commits it to the hands of his servant, who has the same capacity to understand its character and uses that he himself has." (Longpre v. Big Blackfoot Milling Co., 38 Mont. 99, 109, 99 Pac. 131, 134. To same effect see Masich v. American Smelting & Refining Co., 44 Mont. 36, 118 Pac. 764; Miller v. Granite County Power Co., 66 Mont. 368, 213 Pac. 604.)

A defect in a simple tool must be obvious to the person using it and any risk of danger therefrom must be held to be assumed by such user. Among the various implements which fall within the category of simple tools are: (a) A plank to stand on (Mathias v. Kansas City Stockyards Co., 185 Mo. 434, 84 S. W. 66; Ehni v. National Tube Works Co., 203 Pa. 186, 52 A. 166, 93 Am. St. Rep. 761); (b) a rope (Isaacson v. Wisconsin Tel. Co., 138 Wis. 63, 119 N. W. 804; Creegan v. Marston, 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854); and (c) a ladder (Meador v. Lake Shore & M. S. R. Co., 138 Ind. 290, 37 N. E. 721, 46 Am. St. Rep. 384; Kelly v. Brown, 262 Mich. 356, 247

N. W. 900; Kelly v. National Starch Co., 142 App. Div. 286, 126 N. Y. S. 979; Cahill v. Hilton, 106 N. Y. 512, 13 N. E. 339; Jenney Electric Light & Power Co. v. Murphy, 115 Ind. 566, 18 N. E. 30; Roper v. Ware Shoals Mfg. Co., 139 S. C. 48, 137 S. E. 210; Jennings v. Bolte, La. App., 168 So. 377; Nichols v. Bush, 291 Mich. 473, 289 N. W. 219; Mozey v. Erickson, 182 Minn. 419, 234 N. W. 687; Szollosi v. Kloss, 27 O. L. R. 62).

"A ladder is one of the most simple contrivances in general use. The danger attending such use is a matter of almost common knowledge, * * *." (Borden v. Daisy Roller Mill Co., 98 Wis. 407, 74 N. W. 91, 92, 67 Am. St. Rep. 816.) "A ladder, like a spade or hoe, is an implement of simple structure, presenting no complicated question of power, motion, or construction, *and intelligible in all its parts to the dullest intellect.* No reason can be perceived why the plaintiff, brought into daily contact with the tools used by him, as he was, should not be held chargeable, equally with the defendants, with knowledge of their imperfections." (Cahill v. Hilton, supra [106 N. Y. 512, 13 N. E. 341]. (Emphasis supplied.)

"Whether original insufficiency of so simple and commonly known an article as a piece of rope would cast liability on the employer need not be discussed, for the undisputed evidence excludes such situation. This rope had been furnished and proved sufficient for several months, during which had occurred, necessarily and of course, some measure of impairment from exposure to weather and from friction and wear. The master, a corporation, having delivered this appliance over to the two men, plaintiff and another, to be kept in their custody and used by them, could gain information of the development of such a defect as the progressive impairment or weakening of the rope only through the eyes of those employes themselves. They knew the extent and frequency of its use and could observe, as no one else could, the development of any such defect in any of the four ropes. No distinction exists between this and the case of a weakened rung in a ladder, a worn handle or a loosened head of a hammer * * * all of which have been held to fall within the

rule above stated.'' (Isaacson v. Wisconsin Telephone Co., supra, [138 Wis. 63, 119 N. W. 805] citing cases.)

At the beginning of the last trial the defendant objected to the introduction of evidence on the ground, inter alia, that the complaint fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. (See Glenn v. Hill, supra.)

The trial court overruled defendant's above objection and plaintiff proceeded with the introduction of her evidence.

At the conclusion of all the testimony for plaintiff, the defendant interposed a motion for nonsuit which motion was denied by the trial court. Defendant declined to introduce any evidence and the jury rendered its verdict for plaintiff on which judgment was entered.

Defendant then moved for a new trial which motion was denied.

Defendant thereupon appealed to this court from the judgment so rendered against him, assigning as error the denial of defendant's motion for nonsuit, the denial of his motion for new trial, the entering of judgment against him, the overruling of his objections to certain of the court's instructions, and the refusal of the court to give certain instructions offered by the defendant.

Legal Duty. Actionable negligence arises only from a breach of legal duty. (Jonosky v. Northern Pac. Ry. Co., 57 Mont. 63, 187 Pac. 1014, 1015.)

What legal duty did Eli Virta, the owner of the premises, owe to the plaintiff Tyyne Lake under the law of Montana?

A legal duty is an obligation arising either (1) from the contract of the parties or (2) by the operation of law. (Riddell v. Peck-Williamson H. & V. Co., 27 Mont. 44, 69 Pac. 241, 243.)

No Contract Duty. There is no averment in the complaint and there is no evidence in the record of any provision of the contract of lease imposing upon the owner Virta the duty to repair the leased premises or any part thereof. In ''the absence of an agreement in the lease binding the landlord to put or keep

the premises in repair, he is not liable in damages for failure to do so or for injuries sustained by the tenant by reason thereof.'' (Glenn v. Hill, 210 Mo. 291, 109 S. W. 27, 28, 16 L. R. A., N. S., 699. To like effect see: Landt v. Schneider, 31 Mont. 15, 77 Pac. 307; Bush v. Baker, 51 Mont. 326, 335, 152 Pac. 750; Dier v. Mueller, 53 Mont. 288, 163 Pac. 466; Noe v. Cameron, 62 Mont. 527, 205 Pac. 256; Kitchen v. Landy, 215 App. Div. 586, 214 N. Y. S. 241; Restatement of the Law of Torts, p. 966, sec. 355; 15 Cal. Jur., pp. 704-706; 32 Am. Jur., Landlord and Tenant, pp. 526, 528, sec. 662; 52 C. J. S., Landlord and Tenant, sec. 417 subdiv. (2), (3).)

No Common Law Duty. In the absence of an express agreement so to do it is settled that, at common law, a landlord owed no legal duty to his tenant to make repairs on the leased property or to maintain it in a safe or suitable condition for the use or occupancy of the tenant. (Blake v. Dick, 15 Mont. 236, 240, 38 Pac. 1072, 48 Am. St. Rep. 671; York v. Steward, 21 Mont. 515, 55 Pac. 29, 43 L. R. A. 125; Nelson v. Meyers, 94 Cal. App. 66, 270 Pac. 719, 723; Colburn v. Shuravlev, 24 Cal. App. (2d) 298, 74 Pac. (2d) 1060; Lawler v. Capital City Life Ins. Co., 62 App. D. C. 391, 68 F. (2d) 438, 439; Coggins v. Gregorio, 10 Cir., 97 F. (2d) 948; 32 Am. Jur., Landlord and Tenant, pp. 521-523, sec. 657; 52 C. J. S., Landlord and Tenant, sec. 417, subdiv. (2).)

No Statutory Duty. In 1895 by the enactment of sections 2620 and 2621 of the Civil Code of 1895 there occurred the only modification that the legislature of this state has made respecting the landlord's common law duty to his tenant and these sections have application only to the condition of leased *buildings* "intended for the occupation of human beings'' and to the repair of "subsequent dilapidations thereof.'' As to other leased property the rule in this state still is that "in the absence of a statute or agreement, there is no implied warranty that leased premises are suitable for the purposes for which they are demised, or that the lessor will keep the property in repair.'' (Landt v. Schneider, supra [31 Mont. 15, 77 Pac. 308].)

Sections 7741 and 7742, Revised Codes of Montana of 1935 (being secs. 2620 and 2621 of the Montana Civil Code of 1895) were taken from California with the construction theretofore given them by the courts of that state. ''This construction is to the effect that, if the landlord fails to repair after notice, the tenant may himself repair, within a certain limit, or move out; *but he has no redress in damages for injury to person or property consequent upon the landlord's failure to repair.* Whether this construction be right or not, it is presumably adopted with the sections themselves, it constitutes a rule of property, and the courts of this state are without authority to alter it.'' Bush v. Baker, supra [51 Mont. 326, 335, 152 Pac. 752]. (Emphasis supplied.)

In Dier v. Mueller, supra, this court held that, under sections 5226 and 5227, Revised Codes of 1907 (now secs. 7741 and 7742, Rev. Codes 1935), if the landlord upon notice neglects to repair his leased dwelling then the lessee may repair and deduct the expense thereof from the rent or vacate without liability for rent but that *these sections of the Codes give no right of action to recover damages for personal injuries to the tenant caused by the landlord's failure to repair.* See Noe v. Cameron, supra. To like effect see: Nelson v. Meyers, supra; Colburn v. Shuravlev, supra; Farber v. Greenberg, 98 Cal. App. 675, 277 Pac. 534; Reams v. Taylor, 31 Utah 288, 87 Pac. 1089, 1091, 8 L. R. A., N. S., 436, 120 Am. St. Rep. 930, 11 Ann. Cas. 51; Hatzis v. United States Fuel Co., 82 Utah 38, 21 Pac. (2d) 862; Roberts v. Rogers, 129 Neb. 298, 261 N. W. 354, 356; Kitchen v. Landy, supra; Judge Hart's specially concurring opinion in Ripple v. Mahoning Nat'l Bank, 1944, 143 Ohio St. 614, 56 N. E. (2d) 289, at page 292; Lawler v. Capital City Life Ins. Co., supra; 32 Am. Jur., Landlord and Tenant, pp. 542, 543, sec. 672, pp. 526, 528, sec. 662; 52 C. J. S., Landlord and Tenant, sec. 417, subdiv. (4). Compare Doran v. United States Bldg. & Loan Ass'n, 94 Mont. 73, 20 Pac. (2d) 835.

There is no evidence as to who placed the clotheslines on the premises at No. 25 Lee Avenue nor is there any evidence that

Virta, either in person or by agent, at any time made or attempted to make any repairs or replacements on any part of the clothesline. Even though Mrs. Tikkanen leasing No. 21 Lee Avenue, the plaintiff, Mrs. Lake, leasing No. 23 Lee Avenue, both situate in Virta's south house, and Mrs. Branson leasing No. 25 Lee Avenue in Virta's north house made indiscriminate use of the three separate clotheslines one of which was on the premises of each tenant, still such use and practice would not render Virta, the landlord, liable for personal injuries to any of the tenants resulting from such use. "The landlord is not liable for injuries from a defect in premises which are used in common by tenants as tenants in common, since the possession is in them in common and not in the landlord." (32 Am. Jur., Landlord and Tenant, p. 565, sec. 689, note 4. See also 32 Am. Jur., p. 529, sec. 664.) Again it must be remembered respecting the clotheslines that, "If these are leased or included in a lease to a tenant, the landlord does not retain control, for that has passed to the tenant." (Starr v. Sperry, 184 Iowa 540, 167 N. W. 531. See also 1 McAdam on Landlord and Tenant, p. 330, sec. 86, note 27; 32 Am. Jur., p. 164, note 12; Gavin v. O'Connor, 99 N. J. L. 162, 122 A. 842, 30 A. L. R. 1383; Egan v. Krueger, 103 N. J. L. 474, 135 A. 811, 58 A. L. R. 1450 and note at page 1453.)

No Notice to Landlord. Negligence is the gist of this action and negligence implies notice. (Hirsch v. Radt, 228 N. Y. 100, 126 N. E. 653. The record on this appeal is barren of any evidence establishing notice of the alleged defective condition of the particular clothesline to Eli Virta, the landlord, either before or after the alleged incident. In the absence of such proof the evidence could not establish negligence on the part of the landlord even though the law imposed upon him the obligation to repair or replace the clothesline which, as before stated, the law does not require. See Doran v. United States Bldg. & Loan Ass'n, supra; Farber v. Greenberg, 98 Cal. App. 675, 277 Pac. 534; Chapman v. Title Ins. & Trust Co., 1945, 68 Cal. App. (2d) 745, 158 Pac. (2d) 42, 44.

Eli Virta lived for over six years after the date of the plaintiff's alleged fall yet there is not a scintilla of evidence that plaintiff or any one else ever at any time notified Virta that his tenant had met with an accident on his premises nor is there any evidence that plaintiff or her husband ever saw, talked to or communicated with Eli Virta at any time.

Reservation for Common Use. Plaintiff's husband on direct examination testified:

''Q. And when you went to rent those premises, your apartment, was anything pointed out to you as the place to hang the family wash, or laundry? A. Yes. Mrs. Syren opened up the door and showed the north line and the south line and told us we could use either one that is not used.''

On cross-examination the husband testified that when the rental agent, Mrs. Syren, was showing No. 23 Lee Avenue to himself and wife she told them they could use either clothesline if they were empty and that they were ''supposed to have a turn and sometimes if two families do washing and each one come out and hang the clothes first, so she can use and another one have to wait.''

This testimony falls far short of establishing an express reservation of all the clotheslines for the common use of all the tenants.

Ludden v. Schwartz, 291 Mass. 320, 196 N. E. 870, 871, was an action by a third floor tenant to recover for personal injuries sustained in falling from the second-story piazza of a three family house owned by defendant. There was no piazza in connection with the third floor, but at the time of the letting defendant told plaintiff that ''she 'could have the use of it'; that 'Mrs. Murphy, the tenant of suite No. 2, and I could have the use of the piazza together.' '' Before the letting and at the time of the letting Mrs. Murphy stated to both plaintiff and defendant that it was all right for plaintiff to use the veranda and thereafter plaintiff shared its use with Mrs. Murphy. The undisputed evidence showed that Mrs. Murphy and the plaintiff and her niece made common use of the piazza. Later Mrs.

Murphy vacated her apartment. Thereafter in answering the call of prospective tenants of the building plaintiff stepped out on the piazza and as she touched the rail thereof it collapsed, causing her to be thrown to the ground. In holding there was no liability on the part of the landlord the appellate court said: ''On the above facts it is plain that the plaintiff was a tenant of the third floor suite, and a tenant in common with Mrs. Murphy of the piazza or, if not tenant, a licensee of the use of the piazza in common with Mrs. Murphy, and with the consent of Mrs. Murphy, assuming the use of the piazza was a right which appertained to the use of the second floor apartment. It is settled that the plaintiff took the apartment in the condition it was in when it was rented. It is also true that she took the use of the piazza in the condition the piazza was in if it was rented to be used in common with Mrs. Murphy, or if its use rested merely in a license to use it in common with Mrs. Murphy. * * * We think the jury could not have found that the piazza remained in the control of the defendant, as was the fact in the case of Sordillo v. Fradkin, 282 Mass. 255, 256, 184 N. E. 666. The rule that the owner of such an easement is bound to keep it in such condition and repair as may be necessary for the enjoyment of the easement is not here applicable. (Citing cases.)''

In Keesey v. O'Reilly, 181 App. Div. 665, 168 N. Y. S. 844, 845, the defendant owned a four story building. The upper three floors were leased to a tenant who rented out furnished rooms. Plaintiff and his wife and child occupied two rooms on the top floor renting same by the week. They had lived there a year when plaintiff's wife went upon the roof to hang out her washing and was killed by the falling upon her of a part of the chimney. About a week after plaintiff had hired his rooms he asked defendants' janitor as to where the people hung their washings. He testified: ''I asked him where they hung them; he said, 'You, living on the top floor, it will be closer for you to hang on the roof.' '' The appellate court held that this statement of the janitor ''constituted at most a bare permission to make such a use of the roof.'' It also said: ''No evidence was

introduced to show that the defendant or the lessee, Haas, had anything to do with putting up the wire or the rope, but there was testimony adduced by the defendant, which, if credited, tended to show that the wire had been put up by one of the subtenants, and that the rope was put up and taken down from time to time by some one of the subtenants as occasion required. * * * Assuming that the jury would have been warranted in finding that the defendant knew or ought to have known that some of the subtenants were using the roof for drying clothes, the only legal inference properly to be drawn from these facts, in the light of all of the other facts in the case above referred to, is that the defendant acquiesced in and permitted such use of the roof, thus imposing upon the defendant a duty to exercise only such care as is owing to a bare licensee. * * * The presence of the plaintiff on the roof was not expected in the enjoyment of any appurtenance shown by the circumstances to be attached to the lease, and was therefore not to the mutual interest of the parties. Under the rule stated in Heskell v. Auburn L., H. & P. Co., 209 N. Y. 86, 102 N. E. 540 [L. R. A. 1915B, 1127], and Vaughan v. Transit Development Co., 222 N. Y. 79, 118 N. E. 219, the circumstances constituted the deceased a mere licensee.''

In Tracey v. Page, 201 Mass. 62, 87 N. E. 491, 492, the court considered the duties of a landlord to the tenants of a four story tenement house having two tenements on each floor and said: ''In case of the lease of such a tenement (in the absence of some agreement dealing with the matter), the landlord is under no duty to furnish a clothesline to the tenant nor to put up one furnished by him. It is for the tenant to furnish and rig his own line.''

In Phelan v. Fitzpatrick, 188 Mass. 237, 74 N. E. 326, 327, 108 Am. St. Rep. 469, a daughter of the tenants of a tenement building fell from a platform in the third story thereof when a railing broke while she was taking clothes from a line attached to the railing. Suit to recover for the injuries received was brought against the owner of the building. In denying recovery the court said: ''In hiring the tenement the rule of caveat emptor

applied, therefore, to the platform and the railing, as well as to the rest of the tenement. The plaintiff's parents took the tenement in the condition in which it was, and the defendant was under no obligation to repair the railing, if it needed repair, or to make subsequent repairs.''

Culver v. Kingsley, 78 Ill. App. 540, holds that mere permission to a tenant occupying the second story of a two-story dwelling to use, for the purpose of drying clothes, the roof of a shed which was a part of the first story does not of itself impose upon the landlord an obligation to keep the roof in repair for that purpose. See also Cameron v. Feely, 208 Ill. App. 521; Lenz v. Aldrich, 6 App. Div. 178, 39 N. Y. S. 1022.

In Chapman v. Title Ins. & Trust Co., supra [68 Cal. App. (2d) 745, 158 Pac. 44], it is said: ''If there are visible structural defects in the common facilities of an apartment house they are used by the tenant at his peril. (Citing cases.)'' See also Ellis v. McNeese, 109 Cal. App. 667, 293 Pac. 854.

In Jaffe v. Harteau, 56 N. Y. 398, 401, 15 Am. Rep. 438, the court said: ''There is no reason for holding the lessor, in the absence of any agreement or fraud, liable to the tenant for the present or future condition of the premises, that would not be equally applicable to a similar liability sought to be imposed by a grantee in fee upon his grantor.''

In Sawchuk v. Santemma, 1941, 263 App. Div. 743, 31 N. Y. S. (2d) 49, the New York court held as a matter of law, that the landlord was not liable in an action by a tenant to recover damages for bodily injuries sustained in a fall occasioned by the breaking of a wooden platform in a shower bath on the leased premises.

In Liddell v. Novak, 1936, 246 App. Div. 848, 285 N. Y. S. 22, the court held as a matter of law, that the landlord was not liable for bodily injuries sustained by being struck and injured by the falling of a clothesdrier in the kitchen of the leased premises.

In Fleming v. Oppel, 1938, 254 App. Div. 740, 3 N. Y. S. (2d) 971, a landlord was held not liable, as a matter of law,

for bodily injuries sustained by a tenant in a multiple dwelling when her hand struck a defective washtub cover therein.

In Caron v. Grays Harbor County, 1943, 18 Wash. (2d) 397, 139 Pac. (2d) 626, 632, 148 A. L. R. 626, the facts are most similar to those in the case at bar. The suit was by a woman invitee to recover damages for injuries to her back sustained when she lost her balance and fell from about the fifth or sixth rung of a ladder along the filing cabinets in the county clerk's office. The jury returned a verdict against the defendant county but the court granted the defendant's motion for judgment non obstante verdicto and dismissed the cause. In affirming such action of the trial court the supreme court of Washington, in part, said:

"And, as said in 38 Am. Jur. 757, Negligence, sec. 97: 'The liability of an owner or occupant to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or in failing to warn him of dangers thereon, must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * *

" 'There is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant.' * * *

"It is apparent, from what has been said, that everything about which appellant complains was open and obvious, and that she knew as much as, or more than, anyone else about the defective, as well as inconvenient, conditions of the equipment." To same effect see Crawford v. Pacific States Savings & Loan Co., 22 Cal. App. (2d) 448, 71 Pac. (2d) 333.

Plaintiff had a serviceable rope clothesline attached to the rear wall of No. 23 Lee Avenue, which dwelling she occupied. This line was entirely upon the premises which she had under lease but on the day in question plaintiff wholly failed and omitted to use such line. There was a second clothesline attached to the rear wall of No. 21 Lee Avenue, being in the same south

building wherein plaintiff resided as a tenant. Instead of using either of the two lines at the rear of the south building, plaintiff used the north line at the rear of her neighbor's apartment, No. 25 Lee Avenue, which line was attached to her neighbor's lavatory. For the injuries which she there received she has no right to recover from the owner Virta nor from the lessee Mrs. Branson.

The witness Mrs. Branson testified:

"Q. How many clothes lines were there, Mrs. Branson? A. Three.

"Q. And where were these clothes lines located if you recall? A. One was behind our apartment, 25, and there was one on 23 and one in back of 21.

"Q. And was the clothes line attached to the back of these apartments 25, 23 and 21, that you have named? A. Yes. * * *

"Q. Did you say there was a line behind apartment 23? A. Well, yes, there was a shed there and the line ran from the shed."

Proximate Cause. As plaintiff stood on the topmost part of the ladder hanging her wash on the line she met with no mishap so long as she kept her balance. The ladder was of ample strength to support her weight and this it did. However when the line, half filled with heavy wet clothes, parted as plaintiff was pushing it forward and away from her plaintiff was plainly startled. She testified:

"Q. Did you have a hold of the line at the time that it broke? A. I was just pushing it forward.

"Q. Then, what happened when the line broke? A. *Lost my balance and fell from there.*" Again: "Everything happened so sudden that I couldn't tell just exactly how far it was, but I had hung half my wash." Again she says "it is hard to tell just how you fall. When an accident happens, it happens so suddenly that you wouldn't think yourself how it happens."

Thus *it was from the ladder* and not from the clothesline that plaintiff fell. Plaintiff repeatedly testified that while standing on the ladder she *lost her balance* and fell. Unable to recover

her equilibrium she bowed before and succumbed to the inevitable but universal law of gravitation and toppled from the ladder. However, it was plaintiff's own balance that was lost and it was she, and not her landlord, who lost it. Plaintiff, standing on the narrow platform could not have reached with her hands railings or handholds had they been attached to the ladder. She could plainly see and she knew before climbing the ladder that the lavatory wall had no railings or handholds affixed thereto. Observing, knowing and fully appreciating these existing conditions she was the best judge as to her own ability to keep her balance and stay on the ladder. If she misjudged her ability in this regard then she and not her landlord is responsible for the injuries resulting from her miscalculations.

Plaintiff gave the following testimony:

"Q. All right. When the line broke, was there anything there for you to hold onto? A. No, There was nothing.

"Q. Did you have anything to support or hold yourself when *you became overbalanced?* A. No. * * *

"Q. How far from the pulley at your end of the clothes line was your hand when the clothesline broke? A. I was pushing the line out as far as my hand could reach. * * *

"Q. You were using both hands at the time the line broke? A. Yes. * * *

"Q. Is that why you fell, because the ladder shook and the platform shook and there was no place to take hold of? A. *That is why I lost my balance,* when the rope broke and there was no place to take hold of.

"Q. You fell because there was no place to take hold of? A. That is why, because the rope broke and I didn't have any place to get hold from. * * *

"Q. *Did you lose your balance because the platform was small and you couldn't step back?* A. *Yes,* because when the rope broke, the platform was narrow and there was no place to take hold. * * *

"Q. You don't know what caused this fall? A. *I lost my*

*balance* because the rope broke and there. was no place to take hold and that platform was narrow. * * *

"Q. Now that ladder was in the same condition so far as you know when this accident occurred as it was when you rented the place? A. *I never paid any attention to it before until when that accident happened* and then I felt the shaking of it.

"Q. Is that the first time you ever felt it shake? A. *When I lost my balance there,* that is when I felt the shaking.

"Q. Do you mean to say you used that once a week ever since you rented that place and the ladder never shook with you before? A. *I used it every week but I didn't pay no attention to it."*

The above evidence shows that as a matter of law plaintiff was guilty of contributory negligence in the use that she made of both the clothesline and ladder, which bars recovery herein. See Caron v. Grays Harbor County, supra; Sawchuk v. Santemma, supra; Gillard v. Hoffman, 103 Kan. 572, 175 Pac. 395; Marks v. Citron, 243 Mass. 454, 137 N. E. 647; Phelan v. Fitzpatrick, supra; Gavin v. O'Connor, supra; Liddell v. Novak, supra; Fleming v. Oppel, supra; Priver v. Young, 62 Cal. App. 405, 216 Pac. 966.

Plaintiff's evidence wholly fails to establish that her landlord, since deceased, was under any legal duty to her to inspect, repair or replace the clothesline on the premises at No. 25 Lee Avenue which he had leased to Mrs. Branson. The evidence likewise fails to establish that the landlord owed to plaintiff any legal duty whatever to protect her from losing her balance or from the injury resulting therefrom of which she here complains.

Plaintiff's evidence failed to make out a case of actionable negligence against defendant. It was therefore reversible error for the trial court to deny defendant's motions for nonsuit and new trial and to enter judgment for plaintiff for $6,000 and costs. The facts and the law failing to sustain the judgment, it should be reversed with directions to dismiss the action.